George **DAVIS**, Plaintiff-Appellant,

v.

**HUMAN DEVELOPMENT CORPORATION, Defendant-Respondent.**

No. 48481.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 31, 1985.

Motion for Rehearing and/or Transfer Denied Jan. 28, 1986.

Application to Transfer Denied March 25, 1986.

Raymond Howard, St. Louis, for plaintiff-appellant.

Louis Gilden, St. Louis, for defendant-respondent.

STEPHAN, Chief Judge.

Alleging that his employment had been wrongfully terminated, plaintiff-appellant George Davis brought an action for damages and for reinstatement against defendant-respondent Human Development Corporation (HDC). A non-jury trial was held in the Circuit Court of the City of St. Louis, after which the court entered judgment in favor of defendant with a memorandum opinion. The judgment in favor of defendant was based on the court's finding that plaintiff waived his right to seek redress in the courts by his failure to properly avail himself of the internal grievance procedures provided by his employer. We reverse and remand.

Appellant George Davis was administrative assistant of transportation for Project Head Start, a federal program administered locally by defendant HDC, and funded through the U.S. Department of Health and Human Services. 42 U.S.C.A. § 9831 (1981). On January 7, 1982, appellant was suspended from his job pending an investigation by the Director of Head Start, Lois Harris, because of a reported fight be-

tween appellant and a fellow employee. Following the investigation, Director Harris recommended by a memorandum dated January 25, 1982, that appellant's employment be terminated due to his violation of Chapter II(B)(4) of HDC's Personnel Manual, which proscribes "abusive and improper treatment of other employees or the public ..." The memorandum was directed to Georgia Rusan, Chief of Family Services for HDC.

On February 26, 1982, the General Manager of HDC, Harold Antoine, wrote a letter to appellant informing him that his employment was terminated effective immediately, and advising him of his right to appeal the termination pursuant to the grievance procedures in HDC's Personnel Manual. The letter was postmarked March 4th and was received by appellant on March 5th. On March 8th appellant, through his attorney, wrote to Johnnie Lee Henderson, Chairman of the Board of Directors of HDC, appealing his termination and requesting a hearing. No hearing was ever held or action taken with regard to appellant's grievance.

Appellant's termination apparently caused controversy between officials of HDC and the Head Start Policy Council.[1] In a memorandum to Head Start Director Harris dated February 12, 1982, the Policy Council stated that it would "table" the recommendation for termination of appellant's employment. A subsequent letter from the Policy Council to Director Harris, dated March 15, 1982, demanded appellant's reinstatement. This controversy ultimately led to a letter of complaint by the Policy Council to the regional Kansas City office of the Department of Health and Human Services.

Appellant raises three points on appeal. The first two points relate to the trial court's finding that appellant's grievance was not timely filed and that it was not

1. The Head Start Policy Council is a federally established organization designed to effectuate parent participation in the decision-making process with regard to the nature and operation of the Head Start Program. 45 C.F.R. § 1304, Appendix B—Head Start Policy Manual: The Parents—B(1)(1981). The Council's composition is at least 50% parents of Head Start children presently enrolled in that program, plus representatives of the community. *Id.,* Chart A.

filed with the appropriate person, thus appellant failed to exhaust his administrative remedies and was precluded from bringing an action in the circuit court. Appellant contends that he was foreclosed from availing himself of the grievance procedure since he did not receive the termination letter dated February 26, 1985, until March 5th, which made it impossible to file a grievance within the five-working-days grievance period. The trial court, nevertheless, found that the grievance letter sent to the chairman of HDC was untimely. Appellant also argues that requiring him to file a grievance with his supervisor would have been futile in that his supervisor had no authority to reinstate him after he had been dismissed by the General Manager. He contends that only the Board of Directors, with which appellant did file a grievance, could reverse the decision of the General Manager. In his third point, appellant contends that he was improperly ·discharged, since his employment could not be terminated without the approval of the Head Start Policy Council. In light of our disposition of the case, we need only address appellant's final point.

Our review of the trial court's judgment is governed by Rule 73.01 as explicated in the familiar case of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." We conclude that, in holding Head Start Policy Council approval unnecessary to the termination of Davis' employment, the trial court's ruling was against the overwhelming weight of the evidence and amounted to an erroneous declaration of the law.

■ The central issue is whether appellant was an employee of HDC or of Head Start. We are not convinced by respondent's argument that appellant was an employee of HDC, which argument is based solely on the fact that appellant was paid out of the indirect cost budget of HDC. The determination of whether someone is an employee is generally based on who exercises the "right of control." This right is affected by such things as the "extent of control, actual exercise of control, duration of employment, right to discharge, method of payment for services, furnishing of equipment, whether the work is part of the regular business of the employer, and the contract of employment, *none of which is in itself controlling, but each may be considered relevant to the issue.*" *Howard v. Winebrenner*, 499 S.W.2d 389, 395 (Mo.1973) (Emphasis added).

■ In the case at bar, appellant worked in the Head Start program, and his duties involved the transportation of Head Start children to various programs, as well as other duties for HDC. Appellant's supervisor was Lois Harris, the Director of Head Start, who was also the person who conducted the investigation into his involvement in the alleged fight, and who recommended the termination of his employment. Secondly, there was evidence that Head Start Policy Council approval was sought and granted for the original hiring of appellant in 1978, and further that approval of appellant's termination was sought, though not obtained. Thirdly, although appellant was paid from the indirect cost budget of HDC, approximately 61% of that budget—$138,135 of a total budget of $225,340—came directly from Head Start funds. Lastly, defendant's amended answer acknowledges that appellant was an employee of Head Start.[2] We conclude that appellant was in fact an employee of Head Start.[3]

We next examine the issue of whether Head Start Policy Council approval was necessary before appellant's employment

---

**2.** Defendant's amended answer admits the allegations contained in Paragraph 2 of plaintiff's petition, which reads as follows: "Defendant is a corporation that has under its operations the Head Start Project of which plaintiff was an employee."

**3.** We note that the factors relied on in reaching this conclusion are not materially in dispute. All of the evidence considered above was obtained from the testimony of defense witnesses and a defense exhibit, with the exception of one

could be effectively terminated. A review of the applicable federal statutes and regulations, as well as case law, supports appellant's contention. Project Head Start is a federally funded program which is administered locally by public or private nonprofit agencies designated as Head Start agencies by the Secretary of the Department of Health and Human Services. 42 U.S.C.A. § 9836 (1981). Federal funding of the Head Start program is partial in nature, with a ceiling of 80% of approved costs to come from federal contributions. 42 U.S.C.A. § 9835(b)(1981). In light of this, the fact that 61% of defendant HDC's indirect cost budget came from Head Start contributions is persuasive that federal statutory and regulatory requirements are implicated.

██ It is well settled that Congress may prescribe the conditions upon which federal monies may be granted. "Of course since the community action agencies receive federal funding, they must comply with extensive regulations which include employment policies and procedures, lobbying limitations, accounting and inspection procedures, expenditure limitations, and programmatic limitations and application procedures." *United States v. Orleans*, 425 U.S. 807, 817–818, 96 S.Ct. 1971, 1977, 48 L.Ed.2d 390, 400 (1976). The fact that federal funding is partial in nature does not diminish the necessity of compliance with applicable federal regulations. *St. Luke's Hospital v. Midwest Mechanical Contractors, Inc.*, 681 S.W.2d 482, 488–489 (Mo. App.1984).[4] This is also borne out by examination of the language employed in the Head Start statute. "The Secretary shall prescribe rules or regulations ... which shall be binding on all agencies carrying on Head Start Program activities with financial assistance under this subchapter." 42 U.S.C.A. § 9839(c) (1981). No limitation is mentioned as to the amount of federal assistance necessary to trigger the need for compliance with federal rules and regulations relating to Head Start.

Two federal cases, both of which, in differing contexts, deal with private, non-profit organizations administering the Head Start Program, are particularly enlightening. In *Palmiter v. Action, Inc.*, 733 F.2d 1244, 1247 (7th Cir.1984), the court concluded in the context of a garnishment proceeding that, "Even though Action is not a federal agency, its management of the federal funds it received nevertheless was governed by pervasive federal legislation and regulations ..." In *Ginn v. Mathews*, 533 F.2d 477 (9th Cir.1976), the facts are much closer to those in the present case. Three employees of a private, non-profit organization, the Economic Opportunity Council of San Francisco, which administered Head Start, as well as other programs, were discharged from their jobs. The employees sought to bring an action against the EOC, based on the First, Fifth, and Fourteenth Amendments to the United States Constitution, but the action was dismissed by the district court for lack of subject matter jurisdiction. On appeal, the Ninth Circuit found the requisite state action to support jurisdiction and reversed. In detailing the reserved governmental oversight powers present in the Head Start statute, which it relied on in part in finding state action, the court noted:

> As might be expected, the generous purse was not made available without the ever-present strings attached. Numerous restrictions and conditions were imposed on EOC by the federal government, and it even prepared a manual for operations called the "Headstart Policy Manual," one provision of which specified that a Headstart Policy Council, consisting in part of parents of Headstart children, be created by each grantee agency and that such council be permitted to approve or disapprove the hiring and firing of Headstart staff.

*Ginn v. Mathews*, 533 F.2d at 480.

The oversight function of the Head Start Policy Council, as discussed in *Ginn v.*

---

exhibit which was offered by appellant and not objected to by defendant.

**4.** The court in this case concluded that the applicable federal regulations did not stand for the proposition asserted by the appellant therein.

*Mathews, supra,* can be found in the Head Start statute and regulations in effect at the time of appellant's discharge.

Section 9846(b) of the Head Start statute states: "The Secretary shall operate the programs and projects covered by this sub-chapter in accordance with Head Start performance standards." 42 U.S.C.A. § 9846(b) (1981). The Head Start performance standards are found in 45 C.F.R. § 1304 (1981). Included in the performance standards is a section dealing with parent involvement objectives and performance standards:

> The basic parent participation policy of the Head Start program, *with which all Head Start programs must comply as a condition of being granted financial assistance,* is contained in Head Start Policy Manual, Instruction I–31—Section B2, The Parents (OCD Transmittal Notice 70.2, dated August 10, 1970). This policy manual instruction is set forth in Appendix B to this part.

45 C.F.R. § 1304.5–2(a) (1981) (Emphasis added).

Appendix B contains several charts which list the functions and degrees of responsibility for the various policy groups involved in the administration of local Head Start programs. Chart C lists the functions of the Head Start Policy Council. Under the function entitled "Hire and fire Head Start staff of grantee agency" is the letter "C", which is designated as "Must approve or disapprove." The letter "C" is further defined as follows:

> C. *Must Approve or Disapprove.* —The individual or group ... must approve before the decision is finalized or action taken. The individual or group must have been consulted in the decision making process prior to the point of seeking approval.
>
> If they do not approve, the proposal cannot be adopted, or the proposed action taken, until agreement is reached between the disagreeing groups or individuals.

45 C.F.R. § 1304, Appendix B—Definitions as used on charts B and C—(1981).

It is clear from a reading of the applicable federal regulations that Head Start Policy Council approval was necessary for the termination of appellant's employment. It is equally clear that the Policy Council never gave its approval, and, indeed, objected to appellant's dismissal.

We conclude that the trial court's judgment was against the weight of the evidence and erroneously declared the law. The cause is reversed and remanded to the trial court with instructions to enter an order requiring HDC to tender reinstatement to appellant. The trial court should also conduct a hearing to determine the amount of back pay to which appellant is entitled, less any amount appellant has earned or by reasonable diligence could have earned since his dismissal. *Wolf v. Missouri State Training School For Boys,* 517 S.W.2d 138, 143 (Mo. banc 1974).

Reversed and remanded for further proceedings consistent with this opinion.

SIMON, P.J., and HAMILTON, Special J., concur.