**J.H. COSGROVE CONTRACTORS, INC., a Kansas Corporation, and Harold N. Cosgrove, Barbara A. Cosgrove, William M. Adams, and Barbara J. Adams, Appellants,**

v.

**Roger A. KASTER, Mark A. Meyerdirk, Michael W. Gegen, Ben D. Benjamin, Henry D. Bobe, and Dick A. Shaw, Respondents.**

No. WD 46317.

Missouri Court of Appeals, Western District.

April 27, 1993.

Steve A. Leben, Tim Dollar, Kuraner & Schwegler, Kansas City, for appellants.

Peter E. Strand, Shannon L. Spangler, Mark C. Hegarty, Shook Hardy & Bacon, Kansas City, for respondents Kaster, Meyerdirk, Benjamin, Bobe & Shaw.

Donald W. Giffin, Spencer, Fane, Britt & Browne, Kansas City, for respondent Gegen.

Before ULRICH, P.J., and BRECKENRIDGE and HANNA, JJ.

ULRICH, Judge.

J.H. Cosgrove Contractors, Inc., Harold N. Cosgrove, Barbara A. Cosgrove, William M. Adams, and Barbara J. Adams ("Plaintiffs") appeal the order of the trial court granting the motion of Roger A. Kaster, Mark A. Meyerdirk, Michael W. Gegen, Ben D. Benjamin, Henry D. Bobe, and Dick A. Shaw ("Defendants") to dismiss Plaintiffs' claims for failure to state a claim upon which relief could be granted. Plaintiffs also appeal the orders of the trial court granting Defendants' application for change of judge and denying Plaintiffs' subsequent motion for a hearing on Defendants' application for change of judge. The two issues presented are (1) whether Plaintiffs' petition stated a valid claim against the board of directors of a small savings and loan association for negligently hiring, supervising and retaining the chairman of the board of directors, and (2) whether granting a change of judge application without a hearing, following rulings made by the original trial judge on the merits of the underlying claim, was prejudicially erroneous. The judgment of the trial court is affirmed.

Plaintiffs borrowed money from the First Savings Bank and Trust (FSB), a federal thrift institution located in Platte County, Missouri.[1] Defendants were directors of FSB during at least part of the time Plaintiffs were obligated to FSB as borrowers. Jerry Dickson, not a defendant, was chairman of FSB's board of directors.

Plaintiffs' obligations to FSB arose out of their involvement with Executive Hills North and Ted Ehney acting in behalf of Executive Hills North. From 1977 through 1989, J.H. Cosgrove Contractors, Inc., (J.H. Cosgrove) contracted with Executive Hills North to supply building materials and to construct edifices at various construction projects of Executive Hills North. Apparently, by 1987, Executive Hills North was behind in its payments to the construction company, and in February or March of 1987, Mr. Adams met Mr. Ehney to discuss the arrears. At the meeting, Mr. Ehney told Mr. Adams he had devised a plan whereby J.H. Cosgrove could obtain a loan in the amount of $450,000 from FSB, the proceeds of which could be used to reduce the debt owed by Executive Hills North to J.H. Cosgrove. Although J.H. Cosgrove would be listed on the loan documents as the borrower, Mr. Ehney stated both he and Executive Hills North would actually make the payments on the loan. As security for the loan, Mr. Ehney or Executive Hills North would deed a tract of land to the construction company. This land would be transferred back to Executive Hills North after the loan had been fully paid. The loan was to be outstanding for no more than three to six months.

In accordance with this plan, Plaintiffs sent their financial statements to Jerry Dickson, who completed the documents to arrange for the loan. Plaintiffs claim that in March of 1987, Mr. Dickson informed them that the land Executive Hills North was temporarily transferring as security was worth $700,000.[2] In late March or early April of 1987, the loan was completed with some modification: the construction company borrowed $300,000, Mr. and Mrs. Cosgrove borrowed $75,000, and Mr. and Mrs. Adams borrowed $75,000. To secure the loans, J.H. Cosgrove executed a deed of trust, assignment, security agreement, and financing statement pledging as collateral the property transferred to it by Executive Hills North.

J.H. Cosgrove received $400,000 from FSB in late 1987. On December 31, 1987, Mr. Cosgrove, Mr. Adams, J.H. Cosgrove, and FSB executed an assumption and con-

---

1. This statement of the facts of the case is derived from the briefs of the parties and the legal file.

2. Plaintiffs state that at the time of the loan closing, Mr. Dickson informed them that "the land didn't appraise as high as expected."

sent agreement whereby Mr. Cosgrove and Mr. Adams assumed the indebtedness of J.H. Cosgrove to FSB and FSB in turn released J.H. Cosgrove from all liability. J.H. Cosgrove subsequently deeded the property pledged as collateral to Mr. Cosgrove and Mr. Adams.

Executive Hills North and/or Mr. Ehney made interest payments on the three notes from April 1987 through 1988. Thereafter, neither Executive Hills North, Mr. Ehney, nor Plaintiffs paid anything on the notes. Plaintiffs were subsequently forced to defend lawsuits brought by the Resolution Trust Corporation as receiver of FSB for the recovery of the loans when the collateral for the loans proved to be insufficient to cover the amounts due.

Plaintiffs filed suit against Defendants on May 23, 1991, alleging that Defendants had been negligent in their hiring, supervision, and retention of Mr. Dickson, and in their failure to investigate Mr. Dickson.[3] Plaintiffs alleged in their petition that they had been the victims of Mr. Dickson's fraudulent activity:

> [Plaintiffs] were fraudulently induced by Dickson to obtain loans from First Savings Bank, to release and/or decline to file valid mechanic's liens, to accept as collateral certain real estate claimed to be of sufficient value to fully collateralize said loans when Dickson knew that the represented value was untrue, to believe that Dickson was acting in and protecting the bank's interests with respect to said loans, and were forced to defend lawsuits for recovery of said loans when Dickson's fraudulent scheme was uncovered.

On July 5, 1991, Defendants filed a motion to dismiss for failure to state a claim or, in the alternative, for a more definite statement. The motion for more definite statement was sustained. On October 15, 1991, Plaintiffs filed their first amended petition. In the amended petition, Plaintiffs specifically alleged that Defendants permitted Mr. Dickson, under authority granted by them, to solicit, offer, approve, and document loans and letters of credit on behalf of FSB, and that Defendants placed Mr. Dickson in a position in which he could engage in fraudulent and deceptive acts and practices with members of the public and customers of FSB. Plaintiffs stated that as chairman of the board, Mr. Dickson was "hired by and responsible to the First Savings Bank board of directors" and that Mr. Dickson "acted as an agent, servant, and employee in the course and scope of his employment for First Savings Bank."

Upon receipt of Plaintiffs' first amended petition, Defendants filed a second motion to dismiss as well as a request for a change of judge. The application for change of judge provided notice that a hearing on the application would be conducted at 9:00 a.m. on November 14, 1991. However, the circuit judge in the case, Judge Robert A. Meyers, sustained the application on November 8, 1991, prior to the scheduled hearing. The case was transferred to Judge Preston Dean.

Plaintiffs filed a motion to return the case to Judge Meyers for a hearing on the application for change of judge and a motion to stay proceedings pending ruling on that motion. Judge Dean denied both of these motions without a hearing. On May 15 and 20, 1992, Judge Dean granted Defendants' motion to dismiss for failure to state a claim.

## I.

Plaintiffs contend as their first point on appeal that the trial court erred in dismissing their petition for failure to state a claim. They assert the first amended petition stated a valid claim for "negligent hiring, supervision, and retention of an employee." Moreover, Plaintiffs claim the motion to dismiss should not have been sustained because they had not been afforded a reasonable opportunity for discovery.

In determining the sufficiency of a petition challenged by a motion to dismiss, the reviewing court must give the

---

**3.** In August 1991, Mr. Dickson pleaded guilty to conspiracy to commit savings and loan fraud in violation of 18 U.S.C. section 371 in connection with the transactions at issue in this lawsuit.

petition its broadest intendment, treat all facts as true, and construe the allegations favorably to plaintiffs to determine whether the allegations invoke principles of substantive law which may entitle them to relief. *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 570 (Mo.App.1983). The trial court's ruling on a motion to dismiss for failure to state a claim must be construed liberally and favorably to plaintiffs, giving them the benefit of all inferences fairly deducible from the facts stated therein. *Id.* A dismissal will be upheld only if it appears plaintiffs could prove no set of facts in support of their claim which would entitle them to relief. *Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488, 494 (Mo.App. 1990).

■■■ As Plaintiffs correctly note, in order to recover on a negligent hiring and retention theory, a plaintiff must prove that (1) the employer knew or should have known of the employee's dangerous proclivities and (2) the employer's negligence was the proximate cause of the plaintiff's injury. *Gaines*, 655 S.W.2d at 570. Implicit to this cause of action, however, is the threshold requirement that the plaintiff prove that an employer-employee relationship existed between the defendant and the tortfeasor.

■■■ Plaintiffs state facts which, assuming they are true and giving appellants the benefit of all reasonable inferences fairly deducible from the factual statements, arguably support their claims that Defendants knew or should have known of Mr. Dickson's dangerous proclivities[4] and that Defendants' negligence was the proximate cause of their injury.[5] Where Plaintiffs fail, however, is in presenting facts to support their implied contention that Mr. Dickson is Defendants' *employee.* Plaintiffs do state that "[a]s chairman of the board, [Mr. Dickson] was hired by and re-

sponsible to the First Savings Bank board of directors." Although the contention that Mr. Dickson was chairman of the board was a statement of fact, the claim that, as chairman of the board, he was hired by the board is merely conclusory. When reviewing a trial court's order dismissing a petition because it fails to state a claim, conclusions in the petition are not admitted. *Kampe v. Howard Stark Professional Pharmacy, Inc.*, 841 S.W.2d 223, 224 (Mo.App.1992).

Indeed, Plaintiffs can prove no set of facts in support of their implied contention that Mr. Dickson was Defendants' employee. The determination of whether someone is an employee is generally based on who exercises the "right of control." *Davis v. Human Dev. Corp.*, 705 S.W.2d 540, 542 (Mo.App.1985). The shareholders of FSB, not Defendants, possessed the "right of control" over Mr. Dickson, for the shareholders had the exclusive power to elect Mr. Dickson to serve as a director and to remove him from that position. 12 C.F.R. §§ 552.6(a), 552.6–1(f) (1986–90). For Defendants to have hired or retained Mr. Dickson would have been contrary to applicable Federal Home Loan Bank Board regulations. *Id.* As a member of the board of directors of FSB, Mr. Dickson was in the service of FSB. Mr. Dickson's title of "chairman of the board" does not change his status as a non-employee of the board. As members of the board of directors of FSB, Defendants were required by regulation to elect each year a chairman from among the board members to "preside at [the board's] meetings." 12 C.F.R. § 552.6–1(a) (1986–90). While Defendants could have conferred authority upon Mr. Dickson to act as an agent of the bank, *Restatement (Second) of Agency* § 14 C cmt. b (1958), they lacked the power to make him their employee or agent.

---

**4.** Plaintiffs state in paragraph 44(c) of their first amended petition that Defendants negligently retained Mr. Dickson as chairman of the board of FSB "when by the exercise of ordinary diligence the directors knew or should have known of Dickson's violations of laws and regulations in his position as chairman of the board of the bank."

**5.** In paragraph 46 of their first amended petition, Plaintiffs state that "[a]s a direct and proximate consequence of the negligence [of Defendants] alleged herein, plaintiffs have been damaged" and proceed in the remainder of the paragraph to detail the manner in which they were allegedly damaged.

Because Mr. Dickson was not Defendants' employee as a matter of law, Plaintiffs can prove no set of facts which would entitle them to recover on their claim against Defendants for the negligent hiring, supervision, and retention of Mr. Dickson. An opportunity for additional discovery would not aid Plaintiffs. Thus, the trial court correctly dismissed Plaintiffs' petition for failure to state a claim. Point I is denied.

## II.

As their second point on appeal, Plaintiffs allege that the trial court erred in granting a change of judge application and in subsequently failing to return the action to the original trial judge for hearing on the application. Plaintiffs claim that granting the change of judge application was improper because Defendants' motion for change of judge was made several months after the answer was initially due and following rulings made by the original trial judge on the merits of the underlying claim (Point II.A.). Furthermore, Plaintiffs assert the failure to hold a hearing on the application was contrary to Rule 51.05(c) (Point II.B.).

### A.

■ Rule 51.05(b) provides that for an application for change of judge to be timely it must be filed "within thirty days after the answer is due to be filed." As both parties indicate, key to the determination of the timeliness of a change of judge application is the determination of when the answer is due. Rule 55.25(a) states in general that "[a] defendant shall file his answer within thirty days after the service of the summons and petition upon him." The filing of any motion provided for in Rule 55.27, however, such as a motion to dismiss for failure to state a claim upon which relief can be granted, can extend the deadline for filing an answer. Rules 55.25(a), (c); Rule 55.27.

In *State ex rel. Ott v. Bonacker*, 791 S.W.2d 494 (Mo.App.1990), the Missouri Court of Appeals, Southern District, addressed the effect of Rules 55.25 and 55.27

on the time period allowed in Rule 51.05(b) for filing a change of judge application— "thirty days after the answer is due." The court noted that an interpretation of Rule 51.05 should be consistent with a literal reading of the rule, a liberal construction of the rule, and the preservation of both fairness and the appearance of fairness for the litigants, while keeping in mind that the power to disqualify a judge is a privilege which may not be used to achieve irrational ends. *Id.* at 496. Above all it must be presumed that when promulgating Rule 51.05 the Missouri Supreme Court acted "with full awareness and complete knowledge of the present state of ... its rules." *Id.* The court of appeals reasoned that when the supreme court used the phrase "within thirty days after the answer is due" in Rule 51.05(b) "it must be presumed to have been fully cognizant of Rules 55.25(a) and (c) and the provisions contained therein, which provided when an *answer is due* and how the time when an *answer is due* would be altered if Rule 55.27 motions were filed." *Id.* The court of appeals thus determined that the filing of a Rule 55.27 motion by the respondent in a dissolution action gave the respondent forty days after a ruling on the Rule 55.27 motion in which to file a motion for change of judge. *Id.* at 497; Rules 51.05(b), 55.25(c).

In this case, Defendants responded to Plaintiffs' original petition by filing in the alternative a Rule 55.27(a)(6) motion to dismiss for failure to state a claim and a Rule 55.27(d) motion for more definite statement. The trial court granted the motion for more definite statement, and Plaintiffs accordingly filed their first amended petition on October 15, 1991. Although Defendants' answer to Plaintiffs' amended petition would have been due ten days after October 15, Rule 55.25(c), the trial court sustained Defendants' motion to extend the time period to file their answer or other response to November 14, 1991.

Defendants filed their application for change of judge on November 5, 1991, *before* their answer or other response was due. On November 12, 1991, Defendants renewed their Rule 55.27(a)(6) motion to

dismiss, thereby extending the answer due date to ten days after the court denied or postponed their motion. Rule 55.25(c). Under Rules 51.05(b) and 55.25(c), Defendants had until forty days after the court ruled on their motion to dismiss to file their application for change of judge. *Ott,* 791 S.W.2d at 497. Irrespective of whether the application was filed "only after Judge Meyers had indicated certain views on the merits of the action" as Plaintiffs contend, Defendants' application for change of judge was timely. *Id.*

### B.

Under Rule 51.05, the only prerequisite for obtaining a change of judge is a timely application and service of a copy of the application and notice of hearing on the other party. *State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692, 695 (Mo.App.1990). Defendants' application for change of judge was timely and included notice of a hearing to be held on November 14, 1991. The trial court, however, granted the application on November 8, 1991, prior to the hearing.

Rule 51.05 provides both that "[a] copy of the application and notice of the time when it will be presented to the court shall be served on all parties," and "[u]pon the presentation of a timely application for change of judge, the judge *shall* promptly sustain the application." Rules 55.05(c), (e). (Emphasis added). Defendants argue that because the trial judge had no discretion but to grant a proper application for change of judge, *Ott,* 791 S.W.2d at 497, no hearing on the application was necessary. However, "[a]s mandatory as it is that a *proper* motion for change of judge be sustained, the other party is entitled to notice and an opportunity to be heard, and he may contest the *form, timeliness, and sufficiency of the motion.*" *State ex rel. Jackson v. Thompson,* 661 S.W.2d 677, 679 (Mo.App.1983) (quoting *Matter of Buford,* 577 S.W.2d 809, 827 (Mo. banc 1979)). Thus, Plaintiffs were entitled to a hearing on the application for change of judge.

Even though the trial court erred in granting Defendants' application without affording Plaintiffs an opportunity to be heard, the failure to hold a hearing is not reversible error. In their argument, Plaintiffs do not contest the form or sufficiency of the application, but rather only its timeliness. As stated previously in Point I.A., the application for change of judge was timely. Even with a hearing, upon presentation of Defendants' timely motion, proper in form and sufficient, the outcome would be no different—the trial court would have to grant the change. Rule 51.05(e); *Ott,* 791 S.W.2d at 497. Because the failure to hold a hearing on the application did not affect the merits of the action, the change of judge order is not reversible error. Rule 84.13(b). Point II is denied.

The judgment of the trial court is affirmed.

All concur.