**Ronald ANNEN and Diane Annen, Appellant–Respondent,**

v.

**Wally TRUMP, d/b/a, Malibu Construction, et al., Respondent,**

**and**

**Roger F. and R.F. Verslues, Appellant.**

**Ronald ANNEN and Diane Annen, Appellant,**

v.

**Wally TRUMP, d/b/a Malibu Construction, et al., Respondent,**

**and**

**Roger F. and R.F. Verslues, Defendant.**

No. WD 49353.

Missouri Court of Appeals, Western District.

March 21, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1995.

---

Dale C. Doerhoff, Jefferson City, for appellants.

Donald Charles Otto, Jefferson City, John Curran, Osage Beach, for respondents.

Before HANNA, P.J., and
BRECKENRIDGE and SMART, JJ.

HANNA, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of Miller County in an action for negligent design and supervision against appellants/defendants Roger F. Verslues and R.F. Verslues & Associates, Inc. (Verslues) and for breach of contract against the contractor Trump, d/b/a Malibu Construction (Malibu) arising from the construction of a "Country Kitchen" restaurant in Jefferson City. Ronald and Diane Annen (Annen) are the plaintiffs and owners of the restaurant. Malibu was the general contractor hired by Annen to build the Country Kitchen. Verslues was the engineering firm hired by Annen to supervise Malibu and its subcontractors and to advance periodic payments from Annen to Malibu.

Annen's claim is for alleged defects in the front and rear tie walls and the roof of the building. The jury returned a verdict in favor of all defendants on the front tie wall claim. Annen has appealed the judgment entered on that verdict as to Malibu only. Annen recovered $20,000 against Verslues on the rear tie wall claim and $1600 on the roof claim. Verslues has appealed from those judgments.

We first take up the controversy between Annen and Verslues. Verslues challenges the sufficiency of the evidence on both the rear tie wall claim and the roof claim for the reason that Annen failed to make a submissible case of professional negligence because there was no evidence of engineering standards or that Verslues departed from accepted engineering standards and that there was no evidence that any departure caused Annen's damages. Annen maintains that proof of ordinary negligence was sufficient but even if professional negligence was the standard, the evidence satisfied that burden. Verslues also claims that the trial court erred by denying his motion to dismiss Annen's third amended petition for failure to state a claim and by failing to grant a new trial due to instructional error.

■■■ Many facts are disputed. The evidence is reviewed in the light most favorable to the prevailing party and we disregard all evidence and inferences to the contrary to determine whether a submissible case was made. *Dierker Assocs., D.C., P.C. v. Gillis,* 859 S.W.2d 737, 743 (Mo.App.1993). Substantial evidence must support every fact essential to liability in order to make a submissible case. *Eidson v. Reprod. Health Servs.,* 863 S.W.2d 621, 626 (Mo.App.1993). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Hurlock v. Park Lane Medical Ctr., Inc.,* 709 S.W.2d 872, 880 (Mo.App.1985).

The defendant claims there was no evidence of performance standards of the engineering profession for the design of a retaining wall, how Verslues departed from those standards, or evidence of any causal connection between Verslues' negligence and the rear wall damage. Annen maintains that proof of ordinary negligence was sufficient, but if not, the evidence proved professional negligence.

■■■ The rear retaining wall portion of Annen's claim which was submitted to the jury stated that Verslues either failed to require

the use of proper backfill material or failed to design the wall with sufficient tie-backs to hold the rear tie wall in place. The verdict director instruction required proof of professional negligence. When the term "negligent" or "negligence" is used in the court's instruction, it must be defined. *Terrell v. Bailey Limestone Co.,* 575 S.W.2d 775, 777 (Mo.App.1978). Annen submitted MAI 11.06 [1] definition of "negligent" which stated:

> The term "negligent" or "negligence" as used in these instructions as to Defendants Roger Verslues and R.F. Verslues and Associates, Inc. means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of the defendant's profession.

The Missouri statutes regulate the profession of engineering. *See* §§ 327.181 *et seq.,* RSMo 1986. Missouri has applied those standards to other professions. The Missouri Supreme Court in *Fisher v. Wilkinson,* 382 S.W.2d 627 (Mo.1964), explained the rationale and necessity of expert testimony to support a professional negligence claim:

> If laymen [who sit on juries] are not to be guided on issues requiring peculiar and thorough special training in a science or art beyond the experience and knowledge common to mankind by witnesses possessing the necessary testimonial qualifications, juries will be cast into a river of doubt and must establish an arbitrary standard of their own founded upon conjecture and surmise in their effort to reach certain and sure ground.

*Id.* at 632 (*quoting Pedigo v. Roseberry,* 340 Mo. 724, 102 S.W.2d 600, 607 (1937)). *Fisher* was a medical malpractice lawsuit. *See also Haase v. Garfinkel,* 418 S.W.2d 108, 113 (Mo. 1967).

This standard has been applied to architects. "An architect is not a guarantor or an insurer but as a member of a learned and skilled profession he is under a duty to exercise the ordinary, reasonable technical skill,

---

1. It is inconsistent for Annen to now argue that they did not have to prove professional negligence but could satisfy their claim by the proof of ordinary negligence when they submitted MAI

11.06 instruction which defined the standard as "the skill and learning of ordinarily used under the same or similar circumstances by the members of the defendant's profession."

ability and competence that is required of an architect in a similar situation; ..." *Chubb Group of Ins. Cos. v. C.F. Murphy & Assocs., Inc.,* 656 S.W.2d 766, 774 (Mo.App.1983) (*quoting Aetna Ins. Co. v. Hellmuth, Obata & Kassabaum, Inc.,* 392 F.2d 472, 476–77 (8th Cir.1968)). See also, *Brennan v. St. Louis Zoological Park,* 882 S.W.2d 271 (Mo. App.1994), a case of faulty design against the architects. In *Brennan,* there was no testimony from an architect that steps designed by the architect were not safe. *Id.* at 273. The court held that it was necessary for an architect to testify that the steps failed to meet generally accepted architectural standards.[2] *Id.*

The holding in *Pasta House Co. v. Williams,* 833 S.W.2d 460 (Mo.App.1992), required proof of engineering standards to make a submissible professional negligence case against an engineer. The plaintiff hired Williams to perform engineering and survey services for the construction of a restaurant. *Id.* at 461. The case concerns the staking of the restaurant property and whether "good procedure" would have prevented the building from extending beyond the building restriction line. The trial court determined that evidence of professional negligence was necessary and none was presented. *Id.* at 462. The court of appeals affirmed, stating that what constitutes "good procedure" as to whether the engineer could have ascertained the building restriction line by searching the Recorder of Deed's records or contacting the plaintiff, was speculative. *Id.* The plaintiff failed to prove the degree of care and accuracy of a reasonably competent engineer/surveyor dealing with the same or similar facts and circumstances. *Id.* The court held that a determination of what constitutes good procedure required some evidence of the customary practices and procedures of other engineers and surveyors. *Id.*[3]

The facts of this case are far more complex and call for considerably more specialized knowledge than the design of steps, instructions to employees on how to underseal plugs in the highway, or what constitutes good procedure. The evidence in this case was that the purpose of a tie-back was to support the front face of the wall and prevent it from falling down. The jury heard evidence of the design of the retaining wall, the character and compaction of its fill material and the force that the uphill soil exerted on the structural members of the wall. The evidence included an examination of the height of tie-backs and whether the existing bulging or movement of the wall was due to natural forces, faulty construction or design errors. These constituted matters outside of the common experience and knowledge of laypersons. Under these facts, the trial court correctly required that Annen prove professional negligence with the expert testimony of a member of that profession or a person of similar training and education. *See Brennan,* 882 S.W.2d at 273.

Verslues maintains that the evidence did not sustain a submission of professional negligence. The evidence favorable to Annen's proof is as follows. Annen's expert, Dr. Stephenson, was a professor of civil engineering at the University of Missouri at Rolla with a specialty in geotechnical engineering, which is described as soil mechanics study. He described this retaining wall as having pulled away from the tie-backs and testified that the tie-backs were retreating and that there was a bulge area on the wall. The wall had also rotated a bit downward. He stated that he must first determine whether the problem was a design, material or construction problem. Once that was determined, he could go figure out how to fix the rear tie wall. Dr. Stephenson did a number of tests to deter-

**2.** The court made a distinction between the professional knowledge of architects and engineers and stated that an engineer's training and education did not qualify him to testify as to the standard of care for architects. Id.

**3.** See *Komeshak v. Missouri Petroleum Prods. Co.,* 314 S.W.2d 263 (Mo.App.1958), in which the court held it was necessary to have evidence "from persons experienced in the work of under-

sealing highways to the effect that the instructions given plaintiff were insufficient and that persons engaged in such work could reasonably anticipate the occurrence in question." Id. at 272. Since there was no evidence that the defendant failed to follow the custom and practice of those engaged in a similar business, there was no evidence from which a jury could return a verdict for the plaintiff. Id.

mine whether the design was adequate. He testified that a wall of that height, designed and supported as it was, could not stand. The wall had moved and bulged and it should not have. He specifically testified that the design was inadequate in two respects. First, the tie-backs were too short to anchor the wall; and second, the backfill used to support the wall was not free-draining. He concluded that the tie-backs were not tied far enough back into the soil, particularly the ones at the top of the wall. The tie-backs were placed within the area of the soil that was moving with the wall when they should have been tied into more stable soil. He testified that the design of the wall did not meet the standards of tie-backs in the area.

With respect to the soil used, he stated that it was very fine sand and not the kind normally used behind this type of wall. It was not free-draining soil, or strong soil sufficient to support itself. He explained that a coarse sand or gravel should be used for a retaining wall and that this should have been specified in the design, because fine material will hold water and create a water pressure problem.

Donald Mueller was a witness for Annen. He had been in the construction business for over twenty years and had built 400–500 retaining walls, including one in close proximity to the Country Kitchen, where the surrounding soil and rock were very similar to that used by Verslues. That backfill material was sandstone which, upon excavation, became very finely pulverized sand. He recommended to the owner of that property that the majority of the material be discarded and put in "shot rock." He used a simple staggered tie-back system, which to date had proven successful. There were other witnesses who also testified that the fine material was the wrong material for the use to which it was put.

Dr. Stephenson was asked whether the design met the standard and workmanship found in designs of tie walls in the central Missouri area. He testified that the performance of this particular wall was not what it ought to have been. He prepared a report entitled "Investigation and Analysis of the Retaining Wall at Country Kitchen Restaurant in Jefferson City, Missouri." It was done using data collected that we have previously discussed. The expert described the data as being standard in his profession and stated that it is of the kind normally used to arrive at the conclusions he made. He testified that, in his opinion, the wall was not going to remain standing and that, at some point, because of its previous movement, it would fall. The expert witness testified that these facts, and the wall's movement to date, prognosticated that the wall would eventually fall down. He arrived at the conclusion that the wall's failure was due to Verslues' departure from design standards which fell below those standards and workmanship in the area.

■ Having reviewed all of the evidence in the light most favorable to the verdict, we conclude that the testimony with respect to the rear tie wall, when read as a whole, demonstrated that Annen's burden of proving the standard of professional negligence had been met. The evidence established the design standards for a railroad tie wall, showed that Verslues departed from the accepted standards, and that his departure was the cause of the problems with the wall. The judgment entered on the verdict for the rear tie wall claim is affirmed.

Annen's roof claim was submitted on the failure to inspect the roof installation to detect any defects, and to see that an aluminum or gravel coating was placed on the roof. Annen complains that Verslues' failure to put a coating on the roof, which would have acted as a reflector, allowed the sun to cause the roof to wear much earlier than normal. The roof developed blistering and cracking which allowed water to leak inside the building.

■ Annen argues on appeal that no expert testimony was needed because negligent supervision comes within the common knowledge exception to the requirement of expert testimony, citing *Jaeger v. Henningson, Durham & Richardson, Inc.,* 714 F.2d 773, 776 (8th Cir.1983).[4] Annen's instruction sub-

---

4. The case applied South Dakota law. We have not been directed to a Missouri case, or found one, that discusses negligent supervision of an engineer.

mitted that Verslues was negligent by failing to inspect the roof installation for defects and to make certain that a coating was placed on the roof. We understand Annen's argument to be that since the subcontractor's installation was done negligently or since the roof did not have a gravel or aluminum coating, it follows that Verslues negligently supervised the construction of the roof. The supervisory duties of the engineer, the extent of those duties and whether there was compliance with the specifications and plans were outside of the common knowledge and experience of laymen. Expert testimony was necessary and none was supplied. Annen concedes that they did not prove a standard of professional care for the supervision of the roof installation. Therefore, the proof failed as there was not substantial evidence to support the award of the jury for Annen's roof damage. The judgment entered on the verdict for the roof damage is reversed.

In Verslues' next point, he complains that Annen's petition failed to allege that the rear retaining wall was constructed in compliance with the design, which Verslues was charged with preparing, and, therefore, was fatally defective; i.e., it failed to state a claim upon which relief can be granted, citing *Covil v. Robert & Co. Assocs.*, 112 Ga.App. 163, 144 S.E.2d 450 (1965).

■ The primary purpose of a petition is to define and isolate the issues for the parties and the trial court. *Pillow v. General Am. Life Ins. Co.*, 564 S.W.2d 276, 280 (Mo.App.1978). We afford Annen's petition its broadest intendment in determining its sufficiency, treat all facts as true, and construe the allegations favorably to plaintiffs. *J.H. Cosgrove Contractors, Inc. v. Kaster*, 851 S.W.2d 794, 797–98 (Mo.App.1993). Annen pleaded that Verslues provided the design requirements for the retaining wall and supervised its construction. The petition further alleged that Verslues allowed the use of tie-backs and improper backfill material which did not meet proper construction techniques and which thereby caused insufficient backfill stabilization. When the petition is given its broadest intendment, it invokes

principles of substantive law which entitle Annen to relief. *Id.*

■ Further, there was substantial evidence presented at the trial without objection which showed that the retaining wall was built in accordance with Verslues' design. Trial evidence which is presented without objection results in an amendment to the pleadings to conform to the evidence. *Murray v. Ray*, 862 S.W.2d 931, 934 (Mo.App. 1993); Rule 55.33(b).

In his third point, Verslues complains that Annen's two damage instructions, modified from MAI 4.02, improperly submitted as the measure of damages the cost of repair rather than diminution of value. The instructions stated that if the jury found for the plaintiffs, then it was to award them "such sum as you may find from the evidence to be the reasonable cost of repair" of the retaining wall and roof. The instruction as to the roof is a moot issue because we have previously ruled that Annen failed to make a submissible case on that matter. Verslues argues that the instruction should have been diminution in value.

■ One circumstance in which the cost of repair test is allowed occurs "when the property can be restored to its former condition at a cost less than the diminution in value." *Tull v. Housing Auth. of Columbia*, 691 S.W.2d 940, 942 (Mo.App.1985). The evidence on the damages to the rear retaining wall was that the resulting diminution in the value of the building was between $50,000 and $100,000. Alternatively, the evidence was that the cost of returning the wall to its former condition would be approximately $40,000. Therefore, the cost of repair is less than the diminution in value, and was properly submitted as the measure of damages.

Next, Verslues claims that it was error for the trial court to overrule its motion for new trial because Annen accepted the rear retaining wall with bulges and thereby waived any complaints they may have had for the wall's condition. He contends that waiver is the intentional relinquishment of a known right, *Wall Inv. Co. v. Schumacher*, 344 Mo. 225, 125 S.W.2d 838, 839 (1939), and is a fact issue for the jury. Verslues argues that the bulge

was in the wall as a result of pressure from water and mud during a storm that occurred during construction, which the subcontractor attempted to repair. However, the bulge remained when the building was completed and turned over to Annen.

 The record shows that by accepting the work and paying Verslues, Annen did not intentionally relinquish their right to bring this lawsuit for negligence in the design and supervision of the wall and roof. Approximately a year after the completion date, Annen described the bulge in the wall as having "just exploded out." The trial testimony was that the bulge would continue and get worse until it was fixed or the wall fell. Also, the contract between the parties states that payment and acceptance of the work did not constitute a waiver of their claims against Verslues.

Next we turn to Annen's appeal against Malibu. After the trial, the jury found in favor of Malibu on all claims, and the court entered judgment on the jury's verdict. Annen appeals that judgment, claiming that the trial court erred in admitting into evidence the existence of a performance and payment bond. This bond was procured by Malibu as required by the construction contract and guaranteed to indemnify against any losses sustained by Annen due to the failure of Malibu to meet its contractual obligations.

Both parties have agreed that we should look to insurance cases for guidance on this issue. In general, it is improper to inject the issue of the existence of liability insurance into an action for damages. *Missey v. Kwan*, 595 S.W.2d 460, 465 (Mo.App. 1980). It is also generally improper to show that a defendant does not have insurance or for a defendant to make a showing of poverty. *Stafford v. Far–Go Van Lines, Inc.*, 485 S.W.2d 481, 493 (Mo.App.1972).

We do not review the relevancy of the evidence concerning the performance bond, although Malibu has presented a good argument that the bond was relevant to their defense. The law is clear that, even when the injection of insurance or indemnification into a case is improper, not every reference to insurance will constitute reversible error.

*Missey*, 595 S.W.2d at 465. The evidence showed that the performance bond had expired one year after the completion of the construction project, and that during that one-year period Annen did not make a claim on the bond. Annen has failed to demonstrate any prejudice to their case resulting from the admission of the bond. Therefore, the trial court did not abuse its discretion in admitting into evidence the existence and expiration of the performance bond.

The judgment in favor of Annen against Verslues for the damage to Annen's roof is reversed and, in all other respects, the judgment is affirmed.

All Concur.