**Jerry YANTZI and Beverly Yantzi, Appellants,**

v.

**Willard S. NORTON, et al., Respondent.**

**No. WD 51380.**

Missouri Court of Appeals, Western District.

June 18, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1996.

Application to Transfer Denied Sept. 17, 1996.

David M. Peterson, Steven M. Sprenger, Kansas City, for appellants.

Don B. Roberson, Kansas City, for respondent.

Before SPINDEN, P.J., and BERREY and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Plaintiffs allege that Defendant was negligent in attempting to repair the foundation of their home. In support of their claim, they presented the testimony of two persons who were experts in the field of foundation inspection and evaluation. The jury returned a verdict of $75,000 for Plaintiffs. The trial court granted judgment notwithstanding the verdict to Defendant on the basis that, because he was a professional engineer, only another professional engineer was qualified to testify as to the competence of his advice. As neither of Plaintiffs' experts were professional engineers, the trial court found Plaintiffs had failed to make a submissible case.

We reverse and remand for reinstatement of the jury verdict. Where, as here, Defendant held himself out as an expert in the field of foundation inspection and evaluation, the relevant issue was whether Defendant met the standard of care required of those engaged in foundation inspection and evaluation. Plaintiffs' two experts were experts in the field of foundation inspection and evaluation, and properly were permitted to offer expert testimony on that issue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From 1977 to 1992, Plaintiffs Jerry and Beverly Yantzi owned a home on West 114th Terrace in Kansas City, Missouri. In the Spring of 1988, the Yantzis began to notice cracks in the basement walls and ceiling of their home. As more cracks appeared, the Yantzis consulted with several foundation repair companies. In the Spring of 1989, Brian Dahlquist of Bedrock Foundation Repair, and two other foundation repair companies, recommended that the Yantzis install steel piers in their basement to correct problems caused by settling of the foundation.

Defendant Willard S. Norton, a majority owner and chairman of Norton & Schmidt Consulting Engineers, Inc., also inspected the Yantzi home in March 1989. Mr. Norton claimed to be an expert in the field of foundation evaluation and repair. He told the Yantzis that he "wrote papers, gave speeches, and was recognized for what he did." Mr. Norton submitted to the Yantzis a written analysis of the foundation problem which bore a seal showing him to be a professional engineer licensed in Kansas.

In the analysis, Mr. Norton concluded that there were "two different problems: settlement at the shallow garage foundation and heaving at the basement floor slab." He stated that "both of these are easily corrected by tried and tested procedures," including control of soil expansion and cutting of certain steel columns and walls. He said that the installation of piers in the basement, as recommended by the other foundation repair companies, would be "useless." Mr. Norton also claimed that the other companies were just out to make a lot of money and that his plan would fix the problem.

The Yantzis testified that, based upon Mr. Norton's representations, they accepted Mr. Norton's plan to repair their basement. The Yantzis hired a contractor recommended by Mr. Norton to do the actual repair work in accordance with Mr. Norton's specifications. However, by June of 1990, the foundation problems at the Yantzi home had further deteriorated. Mr. Norton concluded after further inspection of the home that additional heaving had taken place in the basement foundation. Upon his recommendation, the Yantzis cut the wall on the east side of the basement. When this procedure failed to correct the foundation problems, Mr. Norton suggested that the Yantzis cut more from the basement slab.

Unfortunately, Mr. Norton's third attempt to repair the foundation also failed. Finally, in the spring of 1991, Mr. Norton suggested that the Yantzis actually cut the steel col-

umns that held the main I-beam in their home.

The Yantzis at this point determined they would not be wise to continue to follow Mr. Norton's advice. They instead contacted Dr. Paul Hilpman, an engineering geologist. There was testimony at trial that a person need not be a professional engineer in order to inspect and evaluate residential foundations and make recommendations for their repair. Dr. Hilpman inspected the Yantzi home in October 1991. After performing a series of tests, Dr. Hilpman determined that the problems in the Yantzi basement were due to settling, and were not due to heaving, as Mr. Norton claimed.

Acting upon Dr. Hilpman's suggestions, the Yantzis hired Brian Dahlquist of Bedrock Foundation Repair to install piers in the basement to lift the foundation back up to near its original position. This corrected the problems caused by the settlement. If Mr. Dahlquist's recommendation had been followed in 1989, rather than 1993, only 15 piers would have been required to fix the problems caused by settlement in the Yantzi basement, instead of the 34 piers required after following Mr. Norton's advice.

The Yantzis filed the present action against Mr. Norton in April, 1993, alleging that in evaluating and attempting to repair their foundation, Mr. Norton "breached a duty to Plaintiffs to provide competent, accurate engineering and foundation advice based upon sound engineering and scientific principles."

To establish the applicable standard of care, and Mr. Norton's deviation from that standard, the Yantzis offered testimony from Dr. Hilpman as an expert on foundation evaluation and repair. They also offered the testimony of Mr. Dahlquist, who had evaluated and repaired foundations for over sixteen years, on the same issue. Mr. Norton's attorney objected to Dr. Hilpman's testimony on the grounds that Dr. Hilpman was not qualified to testify as to the standard of care he should have met as a professional engineer, and that only another professional engineer was qualified to render such an opinion. Mr. Norton did not object to Dr. Hilpman's qualifications as an expert other than in the area of professional engineering.

The trial judge specifically held that Dr. Hilpman would not "be allowed to testify as to the standard of care of an engineer." Accordingly, he testified only as to whether Mr. Norton met the standard of care of an expert in foundation inspection and analysis.

Upon completion of Dr. Hilpman's testimony, defense counsel moved for a mistrial or to strike the testimony of Dr. Hilpman on the grounds that he was not qualified to testify as to the standard of care owed by Mr. Norton as a professional engineer. The trial court overruled this motion because Plaintiffs' claim of negligence related to that of a foundation specialist, not an engineer.

Mr. Norton similarly objected to Mr. Dahlquist offering an opinion as to what an engineer should do in regard to foundation problems. Mr. Dahlquist's testimony was accordingly limited to foundation evaluation and repair. Both Dr. Hilpman and Mr. Dahlquist testified that Mr. Norton did not meet the standard of care for foundation evaluation and repair. Mr. Norton presented the testimony of Donald Dressler, a consulting registered professional engineer, that he had met the standard of care a professional engineer should meet in inspecting foundations.

The jury instruction given on the applicable standard of care was that offered by Defendant, Mr. Norton. Based on MAI 11.06, it stated:

> The term negligent or negligence as used in this instruction means that failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of the Defendant Willard S. Norton's profession.

Defendant also submitted a withdrawal instruction in an attempt to withdraw the issue of Mr. Norton's failure to exercise the skill and learning ordinarily used by foundation repairmen. The Yantzis objected to the giving of the withdrawal instruction, arguing that this was the very issue which the jury was to decide. The trial court refused to submit the withdrawal instruction to the jury.

In closing argument, the Plaintiffs specifically pointed out to the jury that, although Mr. Norton was a professional engineer, Plaintiffs' claims did not relate to Mr. Norton's failure to exercise the degree of care owed by a professional engineer. Rather, Plaintiffs emphasized, their claim of negligence related solely to the degree of care owed by one engaged in the field of foundation inspection and repair.

The jury returned a unanimous verdict in favor of the Yantzis for $75,000. Mr. Norton filed a motion for judgment notwithstanding the verdict (JNOV), alleging that the issue at trial should have been whether Mr. Norton met the standard of care of a professional engineer, not that of a foundation repair expert, and that "the evidence did not support any claim that Defendants' actions were below the standard of care for professional engineers." Although the trial court had rejected this same contention during trial and in instructing the jury, it accepted Defendant's argument after trial and granted JNOV to Mr. Norton. This appeal followed.

## II. STANDARD OF REVIEW

The standard of review of grant of JNOV in a negligence action is whether, viewing the evidence in the light most favorable to plaintiff, reasonable minds could differ as to whether a submissible case was made as to defendant's negligence. *Buck v. Union Elec. Co.*, 887 S.W.2d 430 (Mo.App.1994). This is an issue of law, for *de novo* determination by this Court.

## III. THE APPLICABLE STANDARD OF CARE

 The sole issue in this appeal is whether the applicable standard of care in this case which Mr. Norton was required to meet was that of a professional engineer, or that of a residential foundation evaluation and repair specialist. If the former, then because the Yantzis offered no expert testimony on this issue, they failed to make a

submissible case.[1] If, however, the applicable standard of care was that of one who possessed special knowledge or experience in the field of foundation evaluation and repair, then the verdict should be reinstated. This is because it is undisputed that Plaintiffs presented the testimony of two expert witnesses in the field of foundation inspection and repair who testified that Mr. Norton failed to meet the standard of care required in that field.

In support of his position that Plaintiffs failed to make a submissible case, Mr. Norton argues that, because he "represented himself as a registered professional engineer, and the Plaintiffs desired a professional engineer in lieu of a foundation repairman," only a professional engineer could testify as to the standard of care Mr. Norton owed to the Yantzis. He suggests that *Annen v. Trump*, 913 S.W.2d 16 (Mo.App.1995), requires this result, but we do not find *Annen* applicable.

The issue in *Annen* was whether expert testimony of some type was required to establish the proper standard of care for supervision of the installation of a roof, or whether such installation was a matter which did not require expert testimony because it was within the normal understanding of laymen. *Annen* simply held that the issue was one for an expert, and that because plaintiff failed to offer any expert testimony on this issue at all, plaintiff failed to make a submissible case. *Id.* at 22.

The issue was similar in *Pasta House Co. v. Williams*, 833 S.W.2d 460 (Mo.App.1992), a case also relied on by Mr. Norton. In *Pasta House*, as in *Annen*, plaintiff was held not to have made a submissible case of professional negligence against the defendants, one of which was an engineering firm and the other a professional surveying firm, because plaintiff failed to present any expert testimony at all. The Court simply held that the standard of care required by an engineer and a surveyor were not within the competence of lay persons and that expert testimony was re-

1. Where, as here, however, the trial court ruled during trial that such expert testimony was not required, it would not be appropriate to simply grant JNOV to defendant upon further consideration of the issue after the verdict. Rather, the proper course would be to grant a new trial at which Plaintiffs would have the opportunity to present expert testimony from a professional engineer.

quired. *Id.* at 462. The Court did not address the issue presented in this case.

Defendant also cites us to *Brennan v. St. Louis Zoological Park,* 882 S.W.2d 271 (Mo. App.1994), as supporting his argument that Plaintiffs were required to offer the testimony of a professional engineer in order to make a submissible case against Mr. Norton. Again, however, we find the case inapposite. In *Brennan,* plaintiff fell and was injured on some stairs at the St. Louis Zoo. Plaintiff alleged that the architects who designed the stairs were negligent because they failed to meet the standard of care which a professional architect was required to meet in designing stairs. The expert who testified to this issue was not a licensed architect, however, nor had he ever practiced in the field of architecture. Rather, he was a professional engineer who had worked closely with and supervised architects for over thirty-five years, and who conceded that engineering and architecture were two different professions.

On these facts, the appellate court held that "the fact that [plaintiff's expert] worked closely with architects for a number of years does not mean he is qualified to testify as to the standard of care required of architects by their own profession." *Id.* at 273. Thus, the expert's testimony was insufficient to make a submissible case of professional negligence against the architects.

If the Yantzis had tried to submit their case without use of an expert at all, *Annen* and *Pasta House* would be relevant. If they had tried to submit the issue that Mr. Norton had failed to meet the standard of care required of a professional engineer, *Brennan* would be relevant. They took neither approach, however. As directed by the trial court, they limited their experts' testimony and their verdict director solely to the issue whether Mr. Norton (whatever his professional credentials) met the standard of care required of those engaged in the field of foundation inspection and evaluation. They offered two experts who testified that Mr. Norton's work did not meet this standard. The jury apparently accepted this testimony, and rejected the contrary opinion offered by Mr. Norton's expert.

As noted above, the sole issue before us is whether the standard of care submitted is the standard of care to which Mr. Norton should have been held. While the cases cited by Defendant do not address that issue, *National Cash Register Co. v. Haak,* 233 Pa.Super. 562, 335 A.2d 407 (1975), relied on by the Yantzis, is almost directly on point.

In *Haak,* professional negligence was claimed against a group of architects for the faulty design of a surface water disposal system. At trial, plaintiff offered expert testimony concerning the adequacy of the design from engineers and from a geologist, but not from an architect. Similar to Mr. Norton, defendant argued that, because no architect had provided testimony as to the standard of care required of architects, plaintiff had failed to make a submissible case.

*Haak* rejected defendant's arguments on the basis that the issue for the jury to resolve was whether defendant had met the standard of care for design of surface water disposal systems. As did *Pasta House* and *Annen,* and as did the court below in this case, *Haak* recognized that expert testimony was needed on this issue, stating:

> We have no doubt that expert testimony was required in this case. The "subject of inquiry" was the standard to be applied to one who holds himself out as competent to design and supervise the construction of a surface water disposal system in Lancaster County. This is certainly a subject that "requires special experience."

*Id.* 335 A.2d at 410–411.

The court rejected defendant's argument that only an architect was competent to offer such testimony, however, stating that there was "nothing inherent in the nature of" the experience of designing and supervising the construction of a surface water disposal system that made that expertise unique to architects. Rather, it noted that:

> What the jury needed was not "the assistance of one who possesses a knowledge" of architecture but of surface water disposal systems. Whether the person offering that assistance happened to be an architect, or engineer, or geologist, or something else, was unimportant; what was important was what he knew.
>
> . . . .

In the instant case the subject matter in controversy (the design and installation of a surface water disposal system on the site in question) is not within the exclusive realm of one profession. To the contrary, it is within the realm of at least three professions: architects, engineers, and geologists. Therefore, a member of any of these professions (if otherwise qualified) was competent to state what the appropriate design and installation standards were.

*Id.* at 411 (emphasis added).

 In other words, where persons with varying types of professional credentials are competent to work in a particular field, such as the design of surface water systems, then the issue of their competence should be judged by whether they meet the minimum standards of that field. Such knowledge is within the expertise of all of those who are qualified to act in that field. For this reason they should be judged not by some standard of care particular to the educational degree or professional license they happen to hold, but rather by the standard applicable to the field in which they have chosen to engage.[2]

That same approach is applicable here. While Mr. Norton was a professional engineer, and while that qualified him to engage in foundation inspection and evaluation, persons with other areas of expertise, such as engineering geologists like Dr. Hilpman, and those with years of experience in foundation repair like Mr. Dahlquist, are also qualified to engage in residential foundation inspection and analysis. There was testimony that a person does not have to be a licensed professional engineer in order to render the services provided by Mr. Norton in the present case.

In other words, there is nothing about the engineering field which makes a professional engineer uniquely qualified to evaluate residential foundations. Rather, persons with a variety of different types of training and experience can be equally expert at residential foundation analysis and repair. Once a foundation is evaluated and recommendations for repair made, it does not make sense that the adequacy of the recommendations would be judged differently depending on whether the inspection and analysis had been made by an engineering geologist or by a professional engineer. Whoever made the inspection and evaluation, the issue is whether it was adequately made.[3]

All those recognized as experts in the field of residential foundation inspection and evaluation should be competent to offer such testimony. This is what the trial court initially ruled. Its initial ruling was correct, and the trial court was in error in later determining that Plaintiffs had been required to present the testimony of a professional engineer.

For these reasons, we reverse the grant of JNOV to Defendant and remand for reinstatement of the jury verdict in favor of Plaintiffs.

SPINDEN, P.J., concurs.

BERREY, J., not participating in the decision because of illness.

**2.** *Cf. Anglin Engineering Co. v. J.E. Barry Co.,* 912 S.W.2d 633 (Mo.App.1995) (where isometric drawings did not require special engineering expertise, then statute regulating professional engineers was not relevant); *Komeshak v. Missouri Petroleum Products Co.,* 314 S.W.2d 263, 270–72 (Mo.App.1958) (expert testimony required, and relevant field of expertise was that of persons experienced in the work of undersealing highways).

**3.** *Cf. Tompkins v. Bise,* 259 Kan. 39, 910 P.2d 185 (1996) (licensed dentist could testify as to whether standard of care was met by physician in treating fractured jaw where both physician and dentist were qualified to render such treatment). As a further analogy, assume a mechanical engineer goes to law school and becomes a patent lawyer. The lawyer's engineering training would undoubtedly be very helpful to him as a patent attorney and might cause people to hire him. However, persons with other backgrounds may also be qualified as patent attorneys. If the engineer/lawyer is later sued for malpractice in analyzing a patent, patent lawyers with any of these other suitable backgrounds could offer an opinion as to his competence. Similarly, the fact that Mr. Norton is a professional engineer may make him desirable as a foundation repair expert, but it does not mean that only a professional engineer can testify as to the proper standard of care.