**Idora HENDERSON, Vernon and Laverne Robinson, Sr., Respondents,**

v.

**Anthony L. FIELDS, Appellant.**

**Nos. WD 58275, 58276, 58277.**

Missouri Court of Appeals, Western District.

Dec. 4, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 2002.

Application for Transfer Denied March 19, 2002.

John G. Schultz, Kansas City, for Appellant.

Anita Porte Robb, Kansas City, for respondent.

Before ROBERT G. ULRICH, Presiding Judge, PATRICIA BRECKENRIDGE, Judge, and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Anthony L. Fields appeals from a judgment entered against him in the Circuit Court of Jackson County in favor of Respondents Vernon Robinson, Laverne Robinson, and Idora Henderson for the wrongful deaths of Cecil C. Stowers, Jr., Tracy L. Stowers, and Sydney L. Stowers.

On December 25, 1998, at approximately 10:00 p.m., after having consumed approximately 12½ to 13 ounces of cognac, Appellant was driving northbound on I–435 in Jackson County, Missouri. Appellant was driving approximately 100 miles per hour, weaving in and out of lanes, and passing other vehicles. Ultimately, Appellant's vehicle veered through three lanes of traffic, crossed the grassy highway median, became airborne, and entered the path of the southbound traffic on the highway near the 83rd Street exit.

At that same time, Cecil C. Stowers was driving southbound on I–435 with his wife, Tracy Robinson Stowers, and their four-month-old daughter, Sydney L. Stowers. Appellant's vehicle collided with the Stowers' vehicle, fatally injuring the entire Stowers family.

Following the accident, Appellant got out of his vehicle and began walking away from the scene. However, an individual that had stopped at the accident site caught up to Appellant and insisted that he return to the scene, and Appellant complied. Police and medical personnel arrived shortly thereafter. Appellant's blood alcohol level was tested more than an hour after the accident. The test revealed that Appellant's blood had an alcohol concentration of .16 percent.

On May 24, 1999, Respondents Vernon and Laverne Robinson filed a wrongful death action against Appellant in the Circuit Court of Jackson County for the death of their daughter, Tracy Robinson Stowers. That same day, Idora Henderson filed a wrongful death action against Appellant for the death of her son, Cecil C. Stowers. In addition, Idora Henderson, the paternal grandmother, and Vernon Robinson and Laverne Robinson, the maternal grandparents, together filed a wrongful death action for the death of their granddaughter, Sydney L. Stowers. All three petitions asked for compensatory and punitive damages. The three cases were consolidated for trial.

Prior to trial, Appellant filed a motion to bifurcate the issue of punitive damages pursuant to § 510.263.1. The trial court granted that motion.

All three actions were tried together beginning on December 13, 1999. At the close of evidence, the parties made closing arguments related to the issues of liability, compensatory damages, and whether aggravating circumstances existed. On December 17, 1999, the jury returned their verdicts against Appellant in all three cases and awarded compensatory damages of $3.3 million on each claim. The jury also found that aggravating circumstances existed.

After the jury's finding regarding aggravating circumstances, counsel for the parties made further closing arguments on the issue of the amount of punitive damages. Subsequently, the jury returned its

verdict awarding aggravating circumstances damages of $4.5 million on each claim. The trial court then entered its judgment in accordance with the jury verdicts.

On January 21, 2000, Appellant filed a Motion for Judgment Notwithstanding the Verdict alleging that Respondents were not the proper parties under § 537.080 to bring an action for the wrongful death of Sydney L. Stowers. Appellant also filed a Motion for New Trial and Motion for Remittitur. On February 4, 2000, Respondents filed their suggestions in opposition to those motions and a Motion for Nunc Pro Tunc Order Appointing Co Plaintiffs Ad Litem in the cause of action related to Sydney L. Stowers. On February 10, 2000, the trial court sustained Respondents' motion and appointed the three individual grandparents, Idora Henderson, Laverne Robinson, and Vernon Robinson, Sr., as Co Plaintiffs Ad Litem and stated that those appointments should relate back to the filing of the petition in that case. The court also denied all of Appellant's motions.

Appellant brings this appeal and presents nineteen points for our determination. We address all nineteen points, albeit giving some only the summary attention they deserve, and deny eighteen of them. One point, however, properly raises and presents for decision an important and meritorious claim. Therefore, we consider it first, and then discuss all other points in Appellant's numerically designated order.

In his ninth point, Appellant contends the trial court erred in failing to grant his various motions for directed verdict and his motion for judgment not withstanding the verdict because Respondents' petition related to the death of Sydney Stowers failed to state a cause of action for which Respondents could recover. Appellant claims that Respondents, as Sydney's grandparents, were not proper parties to bring that action under the wrongful death statute, § 537.080.

As stated in *Sullivan v. Carlisle*, 851 S.W.2d 510, 512–13 (Mo. banc 1993):

In relevant part, § 537.080.1 defines who may bring a wrongful death action as follows:

If there be no persons in class (1) [spouse, children or their lineal descendants, or parents] or (2) [siblings or their descendants] entitled to bring the action, then by a plaintiff ad litem. Such plaintiff ad litem shall be appointed by the court having jurisdiction over the action for damages provided in this section upon application of some person entitled to share in the proceeds of such action. Such plaintiff ad litem shall be some suitable person competent to prosecute such action and whose appointment is requested on behalf of those persons entitled to share in the proceeds of such action. . . .

The persons entitled to share in the proceeds recovered by the plaintiff ad litem are determined by § 537.095.2, which states:

When any settlement is made, or recovery had, by any plaintiff ad litem, the persons entitled to share in the proceeds thereof shall be determined according to the laws of descent, and any settlement or recovery by such plaintiff ad litem shall likewise be distributed according to the laws of descent unless special circumstances indicate that such a distribution would be inequitable, in which case the court shall apportion the settlement or recovery in proportion to the losses suffered by each person or party entitled to share in the proceeds. . . .

(emphasis omitted).

Appellant claims that, as Sydney's grandparents, Respondents were not au-

thorized under the statute to bring an action for her death and, therefore, lacked standing to sue. He contends that because the action was not brought by a properly appointed plaintiff ad litem the trial court should have entered judgment notwithstanding the verdict.

Respondents acknowledge that they were not entitled to bring a wrongful death action for Sydney's death in their individual capacities and could only bring the action under the plaintiff ad litem provisions. However, Respondents claim this was properly accomplished in this case.

Subsequent to trial and the entry of judgment, Respondents filed a motion for a Nunc Pro Tunc Order under Rule 74.06(a) asking the court to name them co-plaintiffs ad litem, to have that designation relate back to the filing of the petition, and to allow the pleadings and judgment to conform to that order. On February 10, 2000, the trial court granted Respondents' Motion for Nunc Pro Tunc Order and entered its order appointing Respondents co-plaintiffs ad litem and ordering that those appointments relate back to the filing of the petition on May 24, 1999. The court then denied Appellant's Motion for Judgment Notwithstanding the Verdict as moot.

Respondents claim that the trial court's appointment properly related back to the filing of the action and remedied any problems that existed with regard to their standing to bring the action. Respondents contend that nothing in the statute places a time limit on the trial court for the appointment of plaintiffs ad litem and that the court could properly amend the pleadings in accordance with Rule 55.33 and have them relate back to the filing of the petition.

■■■ We initially note that the trial court could not properly enter a nunc pro tunc order under Rule 74.06(a) appointing Respondents plaintiffs ad litem or have that appointment relate back to the filing of the petition under that rule. "Rule 74.06(a) authorizes a court to correct clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission at any time." *Coon v. Dryden*, 46 S.W.3d 81, 88 (Mo.App. W.D.2001). "A *nunc pro tunc* amendment is appropriate only to correct clerical omissions, mistakes, or misprisions to make the record accurately reflect the judgment actually rendered by the court but not faithfully recorded," and "does not lie to correct judicial errors, mistakes, or oversights, to create a new record, or to enter a judgment never made or one different from that actually rendered." *Id.* "The power to issue *nunc pro tunc* orders . . . constitutes no more than the power to make the record conform to the judgment already rendered; it cannot change the judgment itself." *Soskin v. Wolfson*, 999 S.W.2d 261, 264 (Mo.App. E.D.1999). A nunc pro tunc order must do nothing more than correct a clerical error, and "the order cannot correct anything that resulted from the exercise of judicial discretion because any such change constitutes a change in the trial court's judgment." *Id.*

In this instance, the trial court's order appointed Respondents as plaintiffs ad litem and proclaimed that the appointment would relate back to the filing of the petition. That order clearly exceeded the authority granted by Rule 74.06(a) and attempted to change more than a mere clerical error in the judgment. An order nunc pro tunc cannot be used to effectuate the substitution of parties in an action. *See Steiner v. Vatterott*, 973 S.W.2d 191, 193 (Mo.App. E.D.1998) (holding that the trial court erred in substituting an individual for the estate as a party in an order nunc pro tunc). Accordingly, the

trial court erred in granting Respondents' Motion for Order Nunc Pro Tunc.

 Respondents next argue that, even if an order nunc pro tunc under Rule 74.06(a) was not appropriate, the trial court acted within its authority in appointing them plaintiffs ad litem under § 537.080 and having that appointment relate back to the filing of the petition. They reason that the trial court acted within thirty days of the entry of judgment and thus still retained jurisdiction over the matter at the time the order was entered; that § 537.080 places no time limit on the appointment of plaintiffs ad litem; and that case law allows for such appointments to relate back to the filing of the petition.

As Respondents readily concede, under the clear language of § 537.080, Respondents did not have the statutory authority to bring a wrongful death action for the death of Sydney in their individual capacities. Section 537.080(3) plainly states that if there are no members of the first two statutory classes entitled to bring an action in their individual capacity, the action may only be pursued by a duly appointed plaintiff ad litem. The statute further provides that the court will appoint "some person competent to prosecute such action" as plaintiff ad litem "upon application of some person entitled to share in the proceeds of such action."

Respondents were certainly persons entitled to share in the proceeds under § 537.095.2. Indeed, since Sydney Stowers had no surviving children, parents, or siblings, Respondents were among her primary heirs under our laws of descent and distribution. *See § 474.010*, RSMo (2000). Therefore, the trial court had the authority under § 537.080 to appoint Respondents as plaintiffs ad litem to prosecute an action for Sydney's death once Respondents requested that appointment. But Respondents did not make such application until after judgment was entered in the case. Thus, the real issue is whether the appointment of Respondents as plaintiffs ad litem can be deemed to relate back to the time the original petition was filed and serve to substitute the plaintiffs ad litem as the plaintiffs in the action.

Respondents claim the trial court could properly allow them to amend their petition to reflect the appointment of plaintiffs ad litem and to have that amendment relate back to the filing of the original petition under Rule 55.33(c). Respondents contend that *Gilliam v. Hopkins*, 472 S.W.2d 436, 444 (Mo.App. S.D.1971), reflects the fact that such an amendment is allowed even after trial. But *Gilliam* involved the amendment of pleadings to conform with the evidence presented at trial. *Id.* In this case, no evidence was presented at trial that Respondents had been appointed plaintiffs ad litem or that they were bringing the action in that capacity, nor could it have been, since the appointment did not occur until after trial. Consequently, any amendment to the petition cannot be deemed to have been made to conform to the evidence adduced at trial.

 More importantly, however, regardless of the fact that amendment was attempted subsequent to the entry of judgment, the trial court's appointment of plaintiffs ad litem in this case could not be deemed to relate back to the original petition. "An amendment will relate back to the original petition [under Rule 55.33(c)] ... only when the original plaintiff had the legal right to sue and stated a cause of action at the time the suit was filed." *Smith v. Tang*, 926 S.W.2d 716, 719 (Mo. App. E.D.1996); *See also Call v. Heard*, 925 S.W.2d 840, 850 (Mo. banc 1996). "[W]here the original plaintiff has, under the wrongful death statute, a right to institute an action or is a proper and legally authorized party under the strict provi-

sions of the statute to do so, an amendment substituting a proper party or adding additional parties will relate back to the original petition; but where the original party plaintiff has no right to maintain an action, has no standing to sue under the statute and is not a party authorized to sue under the strict wording of the statute, an amendment which adds or substitutes a proper party does not relate back to the original petition so as to save the action from the running of the statute of limitations." *State ex rel. Jewish Hosp. of St. Louis v. Buder*, 540 S.W.2d 100, 107 (Mo. App. E.D.1976).

Although the individual Respondents are the same individuals that were appointed by the trial court to serve as plaintiffs ad litem, Respondents as individuals and Respondents serving in their capacity as plaintiffs ad litem are separate legal entities. *See Caldwell v. Lester E. Cox Med. Ctrs.-South, Inc.*, 943 S.W.2d 5, 8 (Mo.App. S.D.1997); *State ex rel. Tang v. Steelman*, 897 S.W.2d 202, 203 (Mo.App. S.D.1995); *Buder*, 540 S.W.2d at 105. Respondents as plaintiffs ad litem are, in legal effect, strangers to the action. *Caldwell*, 943 S.W.2d at 8. It does not matter that Respondents in their individual capacity may have a beneficial interest in the cause of action asserted. *Id.*

*State ex rel. Jewish Hospital of St. Louis v. Buder*, 540 S.W.2d 100, 107 (Mo. App. E.D.1976), is on point. In *Buder*, the plaintiff filed a wrongful death action in her personal capacity as the adult child of the decedent in a situation where only a duly appointed administratrix was authorized to sue under the statute in effect at the time. *Id.* After the statute of limitations had run, the plaintiff was appointed administratrix and attempted to file an amended petition in that capacity and have it relate back to the filing of the suit in her individual capacity. *Id.* at 105. The court

held that, because the plaintiff had no right or standing to maintain suit in her personal capacity, "an amendment substituting an authorized and designated party cannot . . . relate back to the original petition." *Id.* at 107. The court noted that "[t]he breath of life cannot, by judicial hands, be instilled into a petition devoid of life." *Id.; See also Tang*, 926 S.W.2d at 720. While subsequent changes to the wrongful death statute have changed the designation of who may properly bring a claim under the statute, the principles of *Buder* still apply.

At the time the original petition was filed by Respondents, they did not have standing under the wrongful death statute to bring an action for Sydney's death. They were not authorized to pursue an action in their individual capacities, and they had not been appointed plaintiffs ad litem. Consequently, they lacked standing to bring suit and failed to state a claim for which relief could be granted. *See, Call*, 925 S.W.2d at 850. Since Respondents lacked the legal capacity to file the original action at the time it was filed, there can be no relation back under Rule 55.33(c). *See, Caldwell*, 943 S.W.2d at 8 (claim for lost chance of survival by appointed plaintiff ad litem could not relate back to action filed by same individual in his individual capacity as the decedent's father); *Tang*, 926 S.W.2d at 719 (holding action filed by personal representative could not relate back to action filed by same individual in their individual capacity); *Buder*, 540 S.W.2d at 107 (holding that action filed by an adult child as administrator could not relate back to an action filed by the same adult child as an individual).

The cause of action related to Sydney's death was filed by Respondents in their individual capacity, the case was tried by them in that capacity, and judgment was awarded to them in that capacity. "It is

imperative, in order to state a claim, that the plaintiffs both plead and prove that they are authorized to bring an action under the wrongful death statute. This is a component of the claim no less than any other component." *Call*, 925 S.W.2d at 850. Since Respondents lacked the statutory authority to bring a wrongful death cause of action for Sydney's death, they failed to plead and prove their cause of action, and the trial court erred in failing to grant Appellant's motion for judgment notwithstanding the verdict. Therefore, the judgment entered on the cause of action related to Sydney's death must be reversed.[1]

We now turn to Appellant's remaining eighteen points. In Point I, Appellant claims the trial court erred in sustaining Respondents' objection to the cross-examination of Respondents' economic expert, Dr. John Ward, about the theory of personal consumption. Appellant claims that cross-examination of Dr. Ward on that subject would have resulted in the compensatory damages being reduced by over fifty-percent.

■ Dr. Ward testified as an economic expert on the subject of the earning capacity of the decedents. During his deposition, Dr. Ward testified that he did not use personal consumption to reduce his calculations of earnings capacity in cases where there is no surviving spouse or child. He testified that he had merely calculated the earning capacity of the three individuals that died in the crash.

Prior to trial, Respondents' filed a motion in limine to any "evidence, argument or inference of the economic concept of 'personal consumption.'" Respondents argued that there was no foundation for the admission of such evidence because Dr. Ward had testified that it was not applicable to this type of situation.

During argument on this motion, the trial court noted that Dr. Ward testified that personal consumption was not a factor that was relevant to his calculation of earning capacity and was not a factor he would consider in this type of situation. The court granted Respondents' motion in limine to preclude the personal consumption testimony. The court stated that such questioning might be proper if the defendant introduced its own expert testimony or other evidence indicating that the personal consumption concept should be considered in this type of situation.[2] On appeal, Appellant challenges this ruling by the trial court.

■ The trial court's ruling on a motion in limine is a preliminary ruling on the admissibility of evidence and is subject to change throughout the course of trial. *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 646 (Mo. banc 1997). "Therefore, 'a complaint about a trial court's in limine ruling preserves nothing for appellate review.'"

---

1. While Respondents claim that Appellant should not be allowed to "sandbag" until judgment is entered before pressing this issue, Respondents bore the burden of properly pleading and proving their case. While judicial economy and general good will would have been served by Appellant asserting his argument prior to trial, the case law provides that the issue of standing to bring suit relates to the subject matter jurisdiction of the court and may be raised at any time. *In re Foreclosure for Delinquent Land Taxes by Action in REM*, 947 S.W.2d 90, 93 (Mo.App. W.D.

1997); *Call v. Heard*, 925 S.W.2d 840, 851 (Mo. banc 1996) ("[f]ailure to state a claim is jurisdictional in nature and may be raised at any time."). Accordingly, under the current rules and case law, Appellant was not charged with raising the issue earlier in the proceedings.

2. At trial, Respondents presented a video tape of the deposition to the jury with this excerpt and all other testimony referencing personal consumption edited out.

*Smith v. Associated Natural Gas Co.*, 7 S.W.3d 530, 536 (Mo.App. S.D.1999) (quoting *Sullivan v. Spears*, 871 S.W.2d 75, 76 (Mo.App. W.D.1994)). "To preserve the issue of exclusion of evidence for appeal, an offer of proof must be made at trial demonstrating why the evidence is relevant and admissible." *Evans v. Wal–Mart Stores, Inc.*, 976 S.W.2d 582, 584 (Mo.App. E.D.1998). "Consequently, when a motion in limine is granted, the proponent of the evidence, in order to preserve the issue for appellate review, must attempt to present the excluded evidence at trial and, if an objection to the proffered evidence is sustained, the proponent must then make an offer of proof." *Id.*

Appellant fails to direct this court to any point in the record where he attempted to introduce any evidence during the course of trial related to personal consumption and was precluded from doing so by the trial court. Indeed, during oral argument, Appellant conceded that no offer of proof had been made at trial. Nor has he referenced any point where he asked the court to reconsider its in limine ruling. Rather, he refers only to the trial court's ruling on the motion in limine in asserting error. Accordingly, Appellant has failed to identify any allegedly erroneous ruling by the trial court that has been preserved for appeal. Point denied.

In point II, Appellant argues the trial court erred in allowing Dr. Ward to testify about non-economic factors that could be considered by the jury in reaching their verdict. He claims that Respondent failed to lay a proper foundation to establish that Dr. Ward had sufficient expertise to identify such non-economic factors. He also contends that Dr. Ward's testimony resulted in verdicts based upon erroneous information and invoked the bias, passion and prejudice of the jury.

During his deposition testimony, Dr. Ward made the following comment at the end of one of his answers: "And then there are the purely non-economic elements of loss such as bereavement and so on that I don't deal with." This is the only testimony complained of in the very limited argument contained in Appellant's brief. Appellant claims that through this statement Dr. Ward was improperly allowed to comment on non-economic figures to be assessed by jurors in the state of Missouri and thereby invaded the province of the jury.

The point is devoid of merit. The record clearly reflects that the cited testimony was redacted by Respondents, without objection from Appellant, and was neither submitted nor admitted into evidence. Point denied.[3]

In his third point, Appellant claims the trial court erred in allowing Respondent to comment on the Tort Victims' Compensation Fund, § 537.675 RSMo, during closing argument in the punitive damages phase of the trial and in failing to grant a mistrial thereafter. On this appeal, he contends that the reference went beyond the law contained in the jury instructions and improperly allowed Respondents' counsel to instruct the jury on law outside of the jury instructions. Appellant argues that the comment aroused the passion and sympathy of the jury and

---

3. In his reply brief, Appellant points to other testimony by Dr. Ward that he claims the trial court improperly allowed into evidence regarding non-economic damages beyond the expertise of Dr. Ward. But Appellant fails to tell us what non-economic factors he claims were mentioned by Dr. Ward. Moreover, in the testimony to which Appellant directs our attention, Dr. Ward does not identify any "non-economic losses" and merely comments on economic losses that are difficult for economists to measure.

resulted in a verdict that was a manifest injustice and miscarriage of justice.[4]

During the rebuttal portion of closing argument in the punitive damages phase, the following exchange occurred:

> Respondent's Counsel: This is a national crisis. We are losing innocent people every single week, we've got to do something. Half of any money—half of any money as to this case—
>
> Appellant's Counsel: Objection of this—I object to that argument, judge, we have talked about it though.
>
> The Court: Overruled, go ahead, Mr. Robb.
>
> Respondents' Counsel: Goes to the state of Missouri called the Tort Victim's Compensation Fund. And, this is to help other people, it doesn't go to the family. So I urge you for all the reasons we've discussed to send a message, be strong, take action here.

Appellant's counsel made no further objection, nor did he move to strike.

 "[T]he rule has always been that a timely and *sufficient* objection must be made to closing argument so that the trial court can take corrective measures to remove the prejudice." *Glidewell v. S.C. Mgmt., Inc.*, 923 S.W.2d 940, 955 (Mo.App. S.D.1996) (emphasis in original). A party who merely announces "I object," and otherwise fails to inform the court as to the basis of an objection preserves nothing for appellate review. *Id.* The rationale for the rule is that not every indiscretion during closing argument warrants the drastic remedy of a mistrial. " 'Improper statements in oral argument may be cured, in given circumstances, by withdrawal, reprimand or admonition, or by an instruction to the jury.' " *Id.* at 956. (*quoting Gilmore*

*v. Union Constr. Co.*, 439 S.W.2d 763, 766 (Mo.1969)). Thus, a specific objection is necessary to give the trial court an opportunity to correctly rule on the objection, and if sustained, to take appropriate curative action, whether it be a mistrial or otherwise.

In this case, Appellant's counsel essentially said "objection" and "I object." He gave no reasons for the objection. This situation is not unlike that in *Glidewell.* There, defense counsel stated: " 'Judge, I just have to ask for a mistrial. I mean, what else is that but an outright appeal to prejudice.' " *Id.* at 956. The trial court overruled the objection, "assuming the statement can properly be called that," without explanation. *Id.* On appeal, the Southern District of this court noted that the trial court could have overruled the objection simply because it was insufficient, not because it thought the argument proper. Accordingly, the appellate court stated that it would not convict the trial court of error for failing to apply one of the other curative remedies when the only request was for a mistrial. *Id.*

We likewise are unwilling to convict the trial court of error for failing to sustain an objection that did not include the legal or factual basis for the objection. The objection preserved *nothing* for appellate review. Point denied.

 *Ex gratia,* we have no hesitation in saying that Respondents' counsel's comment regarding the Tort Victims Compensation Fund was error. It went beyond the evidence and instructions in the case. Counsel may not properly go beyond the issues and urge prejudicial matters in closing argument. *Kelly by Kelly v. Jackson,* 798 S.W.2d 699, 704 (Mo.

---

4. Appellant did not challenge the accuracy of Respondents recitation of the law either during trial, in his post-judgment motions or in his briefs on appeal, although he did raise the issue during oral argument.

banc 1990). "Arguing a matter outside the submitted issues, however, does not constitute per se ground for the granting of a new trial." *Id.* "Deference is given to the better position of the trial judge to evaluate the prejudicial effect of the overall tenor of the closing argument." *Giddens v. Kansas City Southern Ry. Co.*, 937 S.W.2d 300, 309 (Mo.App. W.D.1996). While the comment was improper, we cannot say that the trial court plainly erred because there was no manifest injustice in overruling the insufficient objection. *State v. Driver*, 912 S.W.2d 52, 54 (Mo. banc 1995).

▮▮ Appellant's Point IV asserts that the trial court erred in overruling his objection to the following statement made by Respondents' attorney during closing argument, "You know, there was a refusal from day one to accept—." Appellant objected before Respondent's attorney could finish the sentence and counsel for both parties approached the bench to discuss that objection. Appellant complained that Respondent should not be allowed to argue that he had not accepted responsibility for the accident where he had been precluded by a motion in limine from introducing evidence that he had apologized or expressed remorse to Respondents. Respondents' attorney then stated that he was merely going to mention the failure to accept legal responsibility for the accident as shown by Appellant's denials of responsibility in his pleadings and in challenging liability at trial. The trial court overruled Appellant's objection. Following the trial court's ruling, Respondents' attorney took a different tack in his argument and did not pursue the matter further. Appellant contends that Respondents' argument was a blatant attempt to prejudice Appellant and that the only proper remedy was to grant a new trial.

▮▮ "The determination as to whether a new trial is warranted because of jury argument rests within the trial court's sound discretion." *Giddens*, 937 S.W.2d at 309. "Deference is given to the better position of the trial judge to evaluate the prejudicial effect of the overall tenor of the closing argument." *Id.* "Appellate review of such discretion is limited to a determination of whether there has been an abuse of that discretion." *Id.* "New trial is available only upon showing that trial error or misconduct of the prevailing party incited prejudice in the jury." *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 372 (Mo. banc 1993).

"Even if the statement was improper, which we do not here decide, it certainly was not so plainly inflammatory as to have affected the result of the case." *Hacker v. Quinn Concrete Co.*, 857 S.W.2d 402, 410 (Mo.App. W.D.1993). Appellant fails to establish how he was prejudiced by this unfinished remark. He makes no claim that Respondent ever revisited this subject or ever uttered the word, "responsibility." Standing alone, the statement to which Appellant objected does not really make any sense, and any prejudice that might have resulted from this sentence fragment is not readily apparent. We most certainly cannot conclude that this statement was so prejudicial as to mandate a new trial. Point denied.

▮▮ In Point V, Appellant contends the trial court erred in overruling his objection and failing to grant a mistrial when Respondent stated in closing argument that the ideal verdict would be for the jury to return the decedents to Respondents. Appellant argues that these comments constituted improper personalization and served to induce the bias, passion and prejudice of the jury.

During closing argument in the punitive damages phase, Respondents' attorney made the following argument:

Respondents' Counsel: And, then, at that point I ask that you then consider the issue of damages in this case. And, you know, as you deliberate that issue, I suppose the hard thing is to decide what would be the ideal verdict. What would be the purest form of justice you could do? I think you know—that you would deliberate on this issue and decide that having found that the plaintiffs are entitled to your verdict, that they should have justice to them. And, you would decide that the best justice they could get was that you would return to them Cecil and Tracy and Sydney and nine or more of you would sign that verdict, you would walk down the stairs one last time with Cecil and Tracy there, one of you would be carrying Sydney—and that would be the best—

Appellant's Counsel: Judge, excuse me—excuse me, Your Honor, I object to that argument, it's inappropriate. May I approach.

The Court: Sure.

Appellant's Counsel: Judge, that's a, that' a personalization to the jury that one of them would be carrying Sydney, which I am I object to as inappropriate demand. And I would ask the Court to disregard it.

The Court: Overruled. Objection's overruled, please continue Mr. Robb.

Respondents' Counsel: May I continue with that same argument, Your Honor?

The Court: You may.

Respondents' Counsel: And, one of you would be carrying Sydney and I hope that you would give her directly to Vernon. And, they would shower you with hugs and kisses—

Appellant's Counsel: But, Judge—can I have a continuing objection.

Respondents' Counsel:—and we would all—

The Court: Come on up.

Appellant's Counsel: Judge, this again is personalization to the jury that these deceased victims would shower them with hugs and kisses and I object to it and ask the jury to disregard it.

Respondents' Counsel: It is not, it is not. That is a grossly—

The Court: You're getting close—

Respondents' Counsel: I'll move on, Your Honor.

Appellant's Counsel: Judge—

The Court: You're going to—are you, you're going to move on?

Respondents' Counsel: I'm moving on.

The Court: Okay.

Appellant's Counsel: Judge—

The Court: Objection's sustained, please continue.

Appellant's counsel then asked to make a record, and the Court stated that he could do so later. Prior to making his own closing argument, Appellant's counsel stated:

Judge, based on the extreme personalization to the jury about the deceased members who would hug and kiss them during the closing argument by Mr. Robb, it is an intentional injection of emotional bias or statement engendered to arouse the passion and prejudice of the jury. He personalized it to the jury and it's inappropriate and I just move for a mistrial at this time.

The trial court stated that it was sticking to its previous ruling.

█ On appeal, Appellant asserts the trial court erred in not granting a mistrial

based upon the prejudicial impact of this "improper personalization." The decision to grant or deny a mistrial rests in the sound discretion of the trial court, and the trial court's decision will not be disturbed on appeal absent a manifest abuse of discretion. *Rhodus v. Wheeler,* 927 S.W.2d 433, 437 (Mo.App. W.D.1996). " 'A mistrial is a drastic remedy which should only be granted where the incident is so grievous that the prejudicial effect can be removed in no other way.' " *Id.* (quoting *Countryman v. Seymour R–II School Dist.,* 823 S.W.2d 515, 518 (Mo.App. S.D.1992)). Assessing the prejudicial effect of final argument rests in the discretion of the trial court, and the trial court's decision on that matter will not be disturbed in the absence of an abuse of discretion. *Id.* "This is so because '[t]rial courts have a superior vantage point from which to assess the pervasive effect of an improper argument.' " *State v. Albanese,* 9 S.W.3d 39, 54 (Mo. App. W.D.1999) (quoting *State v. Weaver,* 912 S.W.2d 499, 513 (Mo. banc 1995)).

While Appellant claims that Respondents' attorney improperly personalized to the jury, counsel personalizes to the jury by asking them to place themselves in the place of the tort victim or other party to the action.[5] *Rhodus,* 927 S.W.2d at 437. Respondents' argument did neither and, accordingly, was not personalization. This is not to say, however, that we accept Respondents' contention that the argument was proper as an attempt to explain to the jury that the court is only capable of imperfect justice because it can only award money damages. But we cannot convict the trial court of abusing its discretion when the only objection made by Appellant was based on an inapplicable ground. Point denied.

■ In his Point Relied On for Point VI, Appellant claims the trial court erred in failing to grant his motion for mistrial at the close of arguments because the cumulative effect of Respondents' arguments as asserted in his Points IV and V was so prejudicial as to warrant that drastic remedy. Review of the motion made at trial, however, reveals that Appellant did not ask the trial court to grant a mistrial because of the cumulative effect of the those arguments, but rather only because of the reference to the Tort Victims' Compensation Fund discussed in Point III herein. Accordingly, the issue is not preserved for appellate review. *See, State v. Moore,* 546 S.W.2d 10, 13 (Mo.App. E.D. 1976). Nonetheless, having reviewed the previous points and gratuitously considered the cumulative effect of the alleged improprieties, we find no abuse of the trial court's discretion in denying Appellant's request for a mistrial. Point denied.

■ In his seventh point, Appellant claims the trial court erred in allowing various photographs into evidence over Appellant's objection. Appellant argues that various pictures of the decedents and a picture of Appellant's calendar containing a Mothers Against Drunk Driving ribbon were irrelevant and highly prejudicial to his defense. Appellant contends that these photographs should have been excluded from evidence because their probative value was outweighed by their prejudicial effect.

■ The admission or exclusion of photographic evidence rests within the discretion of the trial court, and the trial court's decision will not be disturbed absent an

---

**5.** "Such arguments ... are 'condemned and uniformly branded improper, the rationale of rejection being that a juror doing that would be no fairer judge of the case' than the party or victim herself." *State v. Rhodes,* 988 S.W.2d 521, 528–29 (Mo. banc 1999) (quoting *Faught v. Washam,* 329 S.W.2d 588, 602 (Mo. 1959)).

abuse of that discretion. *Danbury v. Jackson County,* 990 S.W.2d 160, 162 (Mo. App. W.D.1999). An abuse of discretion will not be found unless the trial court's decision is clearly against the logic of the circumstances and evinces a lack of careful and deliberate consideration. *Id.*

With regard to the pictures of the decedents, Appellant claims the pictures were gruesome and admitted solely to arouse the emotions of the jury. He asserts that he was willing to stipulate that the decedents were killed in the accident and that pictures of the collision damage to the vehicles was sufficient to show the rate of speed of the vehicles, the force of the impact, the location of impact and the cause of death. Appellant reasons, therefore, that the pictures were cumulative and that their prejudicial effect outweighed any probative value they might have.

■ Photographs, even gruesome photographs, if otherwise relevant, are admissible in a wrongful death action. *Kilmer v. Browning,* 806 S.W.2d 75, 80–81 (Mo. App. S.D.1991); *Elliot v. Kesler,* 799 S.W.2d 97, 104 (Mo.App. W.D.1990); *Biller by Summers v. Big John Tree Transplanter Mfg. & Truck Sales,* 795 S.W.2d 630, 635 (Mo.App. W.D.1990). The speed of Appellant's vehicle, the level of impact, the point of impact of each vehicle and cause of death were all issues in the instant case. The photographs of the decedents in their severely crushed vehicle were probative of all those issues. Moreover, pursuant to § 537.090, among other things, wrongful death plaintiffs may be awarded "such damages as the deceased may have suffered between the time of injury and the time of death...." The photographs were also probative as to damages. Finally, the fact that Appellant offered to stipulate that the decedents were killed in the collision with his vehicle does not make the photos any less admissible. *Kenton v.*

*Hyatt Hotels Corp.,* 693 S.W.2d 83, 87–89 (Mo. banc 1985) (holding that videotape evidence showing the aftermath, including the horror and gruesomeness of a multiple fatality tragedy when skywalks collapsed in a Kansas City hotel was properly admitted, notwithstanding pre-trial stipulations as to liability). In this case, the trial court examined the pictures of the decedents and found that none of them were offensive to the court and that they were relevant and probative of matters at issue in the case. The trial court did not abuse its discretion in admitting the pictures of the accident victims.

■ Appellant also complains about the admission of a picture of his calendar, which contained a Mother's Against Drunk Driving ribbon. The calendar was in the front seat of his vehicle after the crash. Appellant claims that "[i]t is apparent, that the respondents' counsel was trying to inflame the jury by showing photographs of appellant Fields' personal calendar with a Mothers Against Drunk Driving ribbon attached." He offers no further argument regarding that picture and fails to identify or describe the alleged prejudicial effect of this picture. At trial, Respondent argued that the picture was relevant to show reckless disregard on the part of Appellant in driving while intoxicated, and Appellant acknowledged that the picture might be relevant to the punitive damages portion of the trial. The trial court could reasonably have determined that the probative value of this photograph outweighed any prejudicial effect. Point denied.

For his eighth point, Appellant contends the trial court erred in sustaining six of Respondents challenges for cause during the course of jury selection. He does not argue that the challenges for cause were made for insufficient reasons but rather asserts the jurors should have been allowed to sit on the jury because they stat-

ed at some point during voir dire that they could still be fair and impartial in rendering a verdict.

■ The trial court is afforded broad discretion in assessing the qualifications of prospective jurors, and the trial court's ruling on a challenge for cause will not be disturbed absent a clear abuse of discretion and a real probability of injury to the complaining party. *Allen v. Grebe,* 950 S.W.2d 563, 566 (Mo.App. S.D.1997). "Because the trial court is in a superior position to determine a venireperson's ability to impartially follow the law, any doubts as to its findings will be resolved in its favor." *Sheffler v. Arana,* 950 S.W.2d 259, 266 (Mo.App. W.D.1997). "The trial court's determination regarding the qualification of a venireperson is a factual one made on the basis of questions and answers elicited on voir dire as well as the demeanor and credibility of the venireperson." *Id.*

■ The trial court is not required to accept as credible a venireperson's testimony that he or she will be able to overcome previously disclosed biases, prejudices and affiliations in rendering a verdict. "A prospective juror's qualifications are not conclusively determined by any single response, but from the entire voir dire examination." *State v. Johnson,* 968 S.W.2d 686, 692 (Mo. banc 1998). As noted, *supra,* the trial court is charged with assessing the demeanor and credibility of each venireperson. *Sheffler,* 950 S.W.2d at 266. The trial court in this case obviously found that the various venirepersons' assertions that they could be fair and impartial despite the biases, prejudices and/or affiliations uncovered during voir dire were not credible, and we defer to the trial court's superior position to make this factual determination. There was no abuse of discretion in sustaining the challenges for cause. Point denied.

■ Appellant's tenth point is premised on trial court error in failing to grant a mistrial after a witness mentioned insurance during his testimony. Appellant claims that insurance was not relevant to the case and that the mention of insurance during the course of the trial prejudiced his defense and resulted in excessive verdicts.

The testimony that Appellant complains of occurred during the testimony of Myron Fears. Appellant's attorney asked Mr. Fears to describe his last conversation with Tracy Stowers, and Mr. Fears provided a very lengthy response. In the course of answering that question, Mr. Fears testified that, during his conversation with Tracy Stowers, he told Mrs. Stowers that he was thinking about getting engaged and buying a house. Mr. Fears testified that after he told her this news Mrs. Stowers advised him that he should get the home inspected before buying and obtain homeowners insurance. After Mr. Fears finished testifying, Appellant asked to be allowed to make a record. In making that record, Appellant objected to Mr. Fears' reference to insurance and requested a new trial based on that testimony. The trial court denied Appellant's motion for a mistrial, but told Respondents' counsel to instruct all future witnesses not to refer to "insurance" in any way in their testimony.

Appellant claims that Mr. Fears' reference to insurance improperly injected the issue of insurance coverage into the case and that the trial court erred in refusing to grant him a mistrial.

Mistrial is the most drastic remedy available to the trial court to correct errors arising during the course of trial, and it should only be granted when the where the prejudicial effect cannot be removed in any other way. *Hudson v. Whiteside,* 34

476

S.W.3d 420, 425 (Mo.App. W.D.2000). "The decision whether to grant or deny a mistrial lies within the sound discretion of the trial court," and "[t]his court will reverse the trial court's decision only if it finds that the decision constituted a manifest abuse of discretion." *Id.*

■ "Generally, 'it is improper to inject the issue of the existence of liability insurance into an action for damages.'" *Id.* (quoting *Annen v. Trump*, 913 S.W.2d 16, 23 (Mo.App. W.D.1995)). While the injection of insurance into a case may constitute reversible error if done in bad faith, not every reference to insurance warrants reversal. *Id.* "The party alleging that the references constitute reversible error must demonstrate that it was prejudiced by the references." *Id.*

In the case at bar, Appellant wholly fails to demonstrate prejudice and merely relies upon his own conclusory statement that "[t]here is no question that the testimony regarding insurance in this case, had a prejudicial effect on appellant." The reference to insurance was made during the course of a lengthy response and did not relate to any insurance coverage available to Appellant. Furthermore, the question asked by Respondents' counsel does not reflect any bad faith on the face of it, and the reference to insurance in Mr. Fears' response was not directly responsive to the question asked. Nothing in the record before us indicates that Respondents' counsel acted in bad faith in asking the question, and the trial court is afforded great deference in determining whether the reference to insurance was injected into the trial in good faith. *Wilson v. Kaufmann*, 847 S.W.2d 840, 851 (Mo.App. E.D. 1992).

Moreover, while the trial court denied Appellant's motion for a mistrial, the court did instruct Respondents' counsel to caution any further witnesses against making any reference to insurance, and Appellant makes no claim that any further reference to insurance arose at trial after that point. The trial court did not abuse its discretion in denying Appellant's motion for a mistrial. Point denied.

■ In his eleventh point, Appellant argues the trial court erred in allowing witnesses to testify about Respondents' grief and bereavement because those items could not be properly considered in assessing Respondents' damages. He contends that such testimony caused the jury to return verdicts influenced by anger, bias, passion and prejudice.

■ The trial court is afforded substantial discretion in determining whether to admit testimony, and its decision will not be disturbed on appeal in the absence of an abuse of that discretion. *Doe v. Alpha Therapeutic Corp.*, 3 S.W.3d 404, 421 (Mo.App. E.D.1999). "'The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.'" *Szasz v. Tella*, 984 S.W.2d 129, 132 (Mo. App. W.D.1998) (quoting *Carter v. Wright*, 949 S.W.2d 157, 162 (Mo.App. W.D.1997) (quoting *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991))).

In his one half-page argument on this point, Appellant bases his entire argument on Laverne Robinson's testimony in response to a question by Respondents' counsel asking her to describe the days following her daughter's death. Mrs. Robinson briefly testified that she couldn't eat, drink or sleep in the days following her daughter's death and that she felt empty and had trouble concentrating.

Aside from generally asserting that this testimony caused him to receive an unfair

trial and resulted in a verdict based on bias, passion and prejudice, Appellant offers no explanation regarding how this evidence prejudiced him. While Appellant objected to the question, "Do you recall the next two, three or four days?", he did not make any objection to the testimony elicited by the question and did not make any request for relief. The trial court's decision simply does not approach the level of being "so unreasonable and arbitrary that the ruling shocks the sense of justice." *Id.* Point denied.

■■■ Point XII complains that the trial court erred in denying Appellant's "request that any prospective jurors who indicate that a member of their family or close friends have been a victim of a drunk driving accident be questioned at the bench outside the presence of the remaining jury panel." The request was made during the pre-trial conference. Appellant now claims that the voir dire questioning about drunk driving incidents tainted the jury pool and denied him a fair trial.

■■■ The trial court possesses broad discretion in deciding whether to allow or prohibit questions of the venire during voir dire. *Ashcroft v. TAD Res. Int'l,* 972 S.W.2d 502, 505 (Mo.App. W.D.1998). " '[T]he trial court's discretion in controlling the manner and extent of questioning in voir dire will be upheld absent abuse.' " *Smith v. Associated Natural Gas Co.,* 7 S.W.3d 530, 534 (Mo.App. S.D.1999) (quoting *State v. Gray,* 887 S.W.2d 369, 382 (Mo. banc 1994)). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the court, and is so arbitrary and unreasonable that 'it shocks the sense of justice' and indicates a lack of careful consideration." *Pollard v. Whitener,* 965 S.W.2d 281, 286 (Mo.App. W.D. 1998) (quoting *Richardson v. State Highway & Transp. Comm'n,* 863 S.W.2d 876,

881 (Mo. banc 1993)). The trial court's handling of voir dire will not warrant reversal absent a showing of abuse of discretion and likely injury. *Id.*

In arguing this point, Appellant claims:

Respondents' counsel purposefully asked the jury panel how many of them had had an experience in their life regarding somebody driving while intoxicated. This allowed the jury panel to openly see how many people had been affected by drunk drivers, and planted a seed in the jurors minds regarding how many people are actually affected by drunk drivers.

As noted previously, Appellant made his request during a pre-trial conference. The trial court denied the request. Appellant did not object to the question about which he now complains, nor did he renew his request that follow up questions be done at the bench outside the hearing of the remaining jury panel. In his argument, Appellant does not refer to any questioning that occurred after the venire panel responded to the question. Accordingly, Appellant has not only failed to preserve anything for our review, but he has wholly failed to identify what questioning would have been prevented if the trial court had granted his motion. Point denied.

Appellant's point XIII consists of this rather convoluted assertion:

The trial court erred in not granting defendant's motions for directed verdict at the close of plaintiff's evidence and once again at the close of all evidence and further erred by not granting defendant's motion for judgment notwithstanding the verdict, and in the trial court submitting instructions # 4, 7, 8, 9, 10, 11, 12, 13, 14, and 15, because the instructions were not supported by a preponderance of the evidence....

He claims that the submission of those instructions resulted in a manifest injustice and excessive verdicts.

Appellant's argument under this point wholly fails to comply with Rule 84.04(e) which provides: "If a point relates to the giving, refusal or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief." Appellant does not set forth any of the challenged instructions in full in his brief.

Appellant's recitation of the challenged instructions is limited to quoting a four-word phrase contained in three of the instructions, and neither that phrase nor those instructions were objected to at trial. Since those instructions were not objected to at trial, even if they had been properly set forth in the argument portion of the brief, the alleged error would not be preserved for appeal. *Zakibe v. Ahrens & McCarron, Inc.*, 28 S.W.3d 373, 387 (Mo. App. E.D.2000); *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 161 (Mo. banc 2000).

Appellant also completely failed to set forth the remaining instructions challenged on appeal. "An appellant who asserts instructional error but does not set forth the instruction in question in the argument portion of his or her brief, fails to preserve the issue for appeal." *Mitchem v. Gabbert*, 31 S.W.3d 538, 541 (Mo. App. S.D.2000); *See also, Desai Corp. v. Colony Ins. Co.*, 30 S.W.3d 223, 225 (Mo. App. W.D.2000).

Moreover, since Appellant failed to develop his arguments with regard to the instructions beyond generally stating what the instruction related to and conclusively asserting that it was not supported by the evidence, we decline to exercise our discretion to entertain plain error review. Point denied.

In his fourteenth point, Appellant claims that the trial court erred in overruling his objection to the testimony of Damen Brodis that a scholarship fund had been established in the Stowers' family name and his request that that testimony be stricken from the record. Mr. Brodis testified about the scholarship fund in a rather lengthy response to the question, "Has the loss of this family left a void in your life?" After Mr. Brodis finished his answer, Appellant asked the court to strike the testimony related to the scholarship fund from the record and to instruct the jury to disregard that testimony. The trial court denied Appellant's request. Appellant claims this testimony was irrelevant and that it aroused bias, passion and prejudice in the jury.

"Even assuming, *arguendo*, that the testimony was irrelevant, the placing of irrelevant evidence before a jury is not a ground for reversal unless it prejudices the complaining party or materially affects the result or outcome of the trial." *Szasz*, 984 S.W.2d at 132. Aside from merely asserting that this testimony aroused bias, passion and prejudice in the jury, Appellant fails to explain how this testimony prejudiced him or had any effect on the outcome of the trial. Perceiving no obvious prejudice from a non-party witness stating that a scholarship fund had been established by former classmates of Mr. Stowers in honor of the decedents, we find that the admission of this testimony could not have constituted reversible error. Point denied.

In his fifteenth point, Appellant argues the trial court erred in allowing evidence of his prior alcohol-related municipal ordinance violations to be presented to the jury. He claims that municipal violations are not admissible in civil matters and that their admission in this case aroused the

bias, passion and prejudice of the jury and resulted in an unfair trial.

During discovery Appellant was asked in an interrogatory whether he had ever been convicted of a felony or a misdemeanor. His answer consisted of the following: "Driving under the influence, October '97, Leawood."

■ On the first day of trial, Appellant filed a Motion in Limine to Exclude Evidence of Prior Alcohol Offenses. In that motion, he claimed for the first time that he had actually received a diversion and not pled guilty to the Leawood offense. He also contended that Respondent should not be able to use this evidence of prior negligence to show that he was negligent on this occasion and that municipal ordinance violations cannot be used to impeach a witness. Appellant asked that Respondent be precluded from any mention of his dealings with the Leawood municipal court.

The trial court stated that it was going to deny Appellant's motion in limine because the court was unaware whether municipal courts in Kansas could hear criminal matters and because the evidence did not indicate whether Appellant was convicted of a felony, a misdemeanor, or a municipal ordinance. The court said that, based on the information before it, it could not hold that a conviction in a municipal court in Kansas was the equivalent of a conviction for violation of a municipal ordinance in Missouri. Appellant's counsel then responded, "I agree with that. I think what you're talking about, whether or not it would be admissible. I'm just asking for leave to correct an inaccuracy in my interrogatory answers that I filed on behalf of Anthony." The Court then allowed Appellant to file an amended answer to that interrogatory and stated that it would allow both the original and amended answers to be read to the jury at trial.

In his point relied on, Appellant claims the trial court erred in allowing testimony regarding his municipal court dealings without identifying who provided the alleged testimony. In his argument, Appellant's only citation to the record is to the hearing on the motion in limine and the trial court's ruling on that motion.

■ "A motion in limine simply does not preserve the right to challenge alleged error on appeal." *Lindsey Masonry Co. v. Jenkins & Assocs., Inc.*, 897 S.W.2d 6, 18 (Mo.App. W.D.1995). "It is a timely objection at trial, when the evidence is offered, which preserves the matter for review, and not the rejection of a motion in limine." *Slankard v. Thomas*, 912 S.W.2d 619, 627 (Mo.App. S.D.1995). "After the denial of a motion in limine, a specific objection must be made at the time the evidence discussed in the motion in limine is introduced at trial" in order to preserve the issue for appeal. *Bowls v. Scarborough*, 950 S.W.2d 691, 702 (Mo.App. W.D.1997).

In the argument portion of his brief, Appellant does not refer us to any portion of the record indicating that the evidence was actually admitted at trial or that he objected to its admission at that time. Accordingly, he has neither directed this court to the ruling of the trial court that he challenges on appeal nor has he established that his challenge is properly preserved for appeal.

Rule 84.04(i) requires Appellant to provide this court with specific page references to the legal file or transcript for all statements of fact and argument. Appellant's failure to comply with 84.04(i) by not providing a page reference for the allegedly erroneous ruling or rulings by the trial court justifies denial of this point. *McNear v. Rhoades*, 992 S.W.2d 877, 883 (Mo.App. S.D.1999). Where Appellant's argument lacks references to the tran-

script pages containing the trial court's ruling, the point is not preserved for appellate review. *Total Econ. Athletic Mgmt. of Am., Inc. v. Pickens*, 898 S.W.2d 98, 107 (Mo.App. W.D.1995). Having already given this issue more thorough treatment than Appellant did in his exceedingly limited argument on this point, we decline to review the voluminous record on appeal *ex gratia* to determine whether this evidence was introduced at trial and whether Appellant adequately preserved the issue for appeal. Point denied.

■ Appellant's sixteenth point asserts the trial court erred in allowing William Newhouse, a criminologist in the Kansas City Police Department, to testify about the number of drinks Appellant would have consumed in order to have a blood alcohol level of 0.16 percent. He claims that a proper foundation had not been laid for that testimony because Mr. Newhouse lacked the requisite level of expertise to offer such an opinion.

In his argument on this point, Appellant conclusively states that Mr. Newhouse lacked sufficient training and had not conducted proper tests to allow him to offer such testimony. Appellant does not specifically discuss Mr. Newhouse's qualifications in any way or even identify him as a criminologist for the Kansas City Police Department. Rather, he focuses his argument on the testimony given and attacks its reliability.

■ The trial court found that Mr. Newhouse was an expert witness. "The qualification of an expert is a matter that lies within the discretion of a trial court." *State v. Middaugh*, 802 S.W.2d 570, 573 (Mo.App. W.D.1991). "A person with substantial practical and specialized experience in a given area may ... qualify as an expert in a given field." *IMR Corp. v. Hemphill*, 926 S.W.2d 542, 544 (Mo.App. E.D.1996). " '[A] witness qualifies as an expert if, by reason of education or special experience, he possesses superior knowledge respecting a subject about which persons who have no particular training are incapable of forming an accurate opinion or drawing correct conclusions.' " *Middaugh*, 802 S.W.2d at 573.

Mr. Newhouse testified that he was responsible for analyzing blood for alcohol content as part of his duties in the Kansas City Police Department crime laboratory. Mr. Newhouse stated that he had been doing blood forensic analysis for approximately twenty-seven years. He testified that he first became licensed in the field of forensic alcohol analysis in 1972 and that he had analyzed over 4,000 blood samples for alcohol content during his career. He also noted that he had participated in various studies on the effect of alcohol on individuals. Mr. Newhouse testified that in the course of his work he had been asked to formulate opinions about the quantity of alcohol that an individual of a given weight would have to consume over a specific time span in order to reach a certain blood alcohol level. Mr. Newhouse stated that, using the Widmark Formula that had been accepted in the field for over fifty years, he could estimate the number of drinks that were in Appellant's system at the time the blood alcohol sample was taken. The trial court determined that Mr. Newhouse was an expert and that the testimony that the formula was well-received in the field was sufficient to establish the foundation for the testimony. Mr. Newhouse then testified that based upon Appellant's weight and blood alcohol level he would have had the equivalent of approximately eight ounces of 100 proof beverage or nine and a half ounces of 80–proof beverage in his system at the time the blood was drawn. Without objection, Mr. Newhouse went on to testify that based on the time Appellant claimed he started

drinking, Appellant would have consumed approximately 12½ to 13 ounces of 80–proof cognac that evening.

■■■ The decision whether to admit or exclude expert testimony is left to the sound discretion of the trial court. *Smith v. Wal–Mart Stores, Inc.*, 967 S.W.2d 198, 206 (Mo.App. E.D.1998). " 'Each case is determined by its own facts as to whether an abuse of discretion occurred.' " *Id.* (quoting *Nugent v. Owens Corning Fiberglas, Inc.*, 925 S.W.2d 925, 931 (Mo.App. E.D.1996)).

Appellant's argument challenging the aforementioned testimony makes little sense. He appears to be claiming that the testimony was improper because Mr. Newhouse offered an opinion on how much 100–proof beverage would need to be in Appellant's system to register a .16 percent blood alcohol level when the evidence indicated that he had been drinking 80–proof cognac. Given Mr. Newhouse's clear testimony specifically dealing with the consumption of 80–proof cognac, we cannot discern what prejudice Appellant is claiming resulted from the testimony about 100–proof beverage consumption.

Appellant also appears to claim that Mr. Newhouse's testimony failed to properly take into account his weight of 185 pounds. We again have difficulty discerning the basis of Appellant's argument. Mr. Newhouse specifically testified that he had conducted his calculations based upon Appellant's weight of 185 pounds as recorded by the booking officer.

■■■ Knowledge of the metabolism of alcohol in human beings does not normally fall within the bounds of a juror's knowledge. *Middaugh*, 802 S.W.2d at 573. Mr. Newhouse offered testimony establishing that he had significant experience in the blood-alcohol testing field, that he had studied the subject, and that he was basing

his opinion on a well-established formula. Appellant's attempt to attack the validity of the formula and any weakness in the foundation for his opinion goes only the weight to be given the opinion and could be brought out during cross-examination. *Irving v. Missouri State Treasurer*, 35 S.W.3d 441, 447 (Mo.App. W.D.2000). The trial court did not abuse its discretion in allowing Mr. Newhouse to offer the challenged testimony. Point denied.

■■■ In his seventeenth point, Appellant claims the trial court erred in overruling his requests for a mistrial because juror questions during deliberations indicated that the jurors were confused. He contends that juror confusion prejudiced him and resulted in "a manifest injustice, a miscarriage of justice and excessive verdicts."

■■■ " A mistrial is the most drastic remedy for trial error and 'should be granted only where the incident is so grievous that the prejudicial effect can be removed no other way.' " *Hudson*, 34 S.W.3d at 425 (quoting *Philmon v. Baum*, 865 S.W.2d 771, 779 (Mo.App. W.D.1993)). "The decision whether to grant or deny a mistrial lies within the sound discretion of the trial court." *Id.* The trial courts decision will only be reversed where there has been a manifest abuse of discretion. *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 170 (Mo.App. W.D.1997). "To establish manifest abuse, there must be a grievous error where prejudice cannot otherwise be removed." *Id.*

During the first phase of their deliberations, the jury sent the judge a question stating, "Is the dollar amount for wrongful death only or should it consist of both wrongful death and punitive damage?" After receiving this jury request, the trial court asked counsel for suggestions on how to respond. Counsel for Respondent sug-

gested the following response: "Please be guided by Instruction numbers 10, 11, and 12 on this issue." Counsel for Appellant stated, "I agree." The trial court then provided the jury with that written response without objection. Subsequently, the jury returned its verdicts awarding compensatory damages on all three causes of action and finding that aggravating circumstances existed.

During the second phase of the bifurcated deliberations, another jury request was received by the court stating, "Are there anymore [sic] decisions that we are going to have to make concerning money? Because we were under the impression that we were finished with our first verdict." The court asked counsel if they had any suggestions for a response. Respondent's counsel suggested merely stating that this would be the final determination they would have to make. Appellant's counsel asked the court to have the jury return and accept their original verdict as their complete verdict. Alternatively, Appellant's counsel suggested allowing the jury to break up their original award into compensatory and punitive damages. Respondent's attorney then argued that the jury's verdict would reflect whether they included punitive damages in the first verdict if they did not award any further damages in the second verdict. The court sent back its response to the jury stating, "In these final deliberations, please be guided by Instructions 1 to 15, which are attached hereto, and Instruction 16 in arriving at your verdicts D, E, and F."

As the bailiff was handing the jury the court's response to the previous question, the jury handed the bailiff another request which stated, "What is torts? What does it actually do? Can we make another recommendation besides monetary?" After discussing the parties' suggestions in response, the trial court responded, "My response is that you be guided by the law as set forth in the instructions and the evidence presented during the trial." Subsequently, the jury returned its verdicts on aggravating circumstances.

In his argument, Appellant claims: "The Court's refusal to give clear guidance to the jury or, for that matter, to seek the clarification on the jury's understanding of the Court's instructions, constituted an abuse of discretion. It is clear from the questions and from the jury's subsequent punitive damage awards that it interpreted the Court's responses to the three questions as an order to increase the jury award."

Although Appellant argues that the jury's notes demonstrate that a different verdict would have been reached if the instructions had been better explained to the jury, Appellant's assertions are only conjecture. *See Reed v. Sale Mem'l Hosp. & Clinic*, 741 S.W.2d 819, 825 (Mo.App. S.D.1987). The questions themselves do not establish that the jury misunderstood or misapplied the instructions, *See State v. Bowles*, 23 S.W.3d 775, 783 (Mo.App. W.D. 2000), and even if the questions did indicate some confusion, nothing in the record indicates that the jury continued to have questions after receiving the trial court's responses and re-examining the instructions. The jury is presumed to have followed the instructions given to them by the trial court. *Cole ex rel. Cole v. Warren County R–III Sch. Dist.*, 23 S.W.3d 756, 759 (Mo.App. E.D.2000); *State v. Lyons*, 951 S.W.2d 584, 598 (Mo. banc 1997).

 Furthermore, the "jurors speak through their verdict," and their deliberations may not be used to impeach the jury's verdict. *State v. Babb*, 680 S.W.2d 150, 152 (Mo. banc 1984); *Stotts v. Meyer*, 822 S.W.2d 887, 889 (Mo.App. E.D. 1991). "Whether a juror understood the law as contained in the court's instructions,

did not join in the verdict, voted a certain way due to a misconception of the evidence or other matters 'resting alone in the juror's breast' will not be inquired into." *McPherson v. David,* 805 S.W.2d 260, 262 (Mo.App. W.D.1991) (quoting *Baumle v. Smith,* 420 S.W.2d 341, 348 (Mo.1967)).[6]

The trial court did not abuse its discretion by denying Appellant's request for a mistrial based on the jury questions. Point denied.

■ For his penultimate point, number eighteen, Appellant asserts the trial court erred in allowing Officers Harms and Hellerich to testify about the movement of his vehicle, the speed of his vehicle, and the damage sustained by his vehicle. Appellant contends that a sufficient foundation was not laid for this testimony because these officers did not gather evidence at the scene and did not have personal knowledge of the movements of his vehicle. Appellant further contends that the officers did not utilize "acceptable principals [sic]" in forming their opinions.

In his argument under this point, Appellant attempts to argue five different claims of error in summary fashion. He begins with a paragraph contending that the trial court improperly admitted two exhibits depicting marks from Appellant's vehicle. In the third paragraph under this point, Appellant offers up a one sentence argument that the trial court erred in allowing Officer Hellrich to testify about the length and depth of the "gauge" marks left by Appellant's vehicle in the road and about the number of times he had seen an engine disengaged from the body of a vehicle.

He asserts, without further argument, that this testimony was "irrelevant, immaterial, prejudicial and had no probative value." Appellant then concludes his argument on this point with a paragraph claiming, without any citation to the record, that he was prejudiced by not being able to show the jury photographs of marks left in the road by his tires.

■ None of these claims of error can be deemed to have been asserted in his point relied on. This court is not obliged to determine questions that are not stated in the points relied on. *Martin v. McNeill,* 957 S.W.2d 360, 366 (Mo.App. W.D.1997). Issues that are raised only in the argument portion of a brief are not presented for review. *Turpin v. Anderson,* 957 S.W.2d 421, 427 (Mo.App. W.D.1997). Accordingly we do not address those claims.

With regard to the testimony of the two officers about the speed and movement of his vehicle, Appellant does not challenge their qualifications to give expert testimony. Rather, he acknowledges our standard of review, which is that "[t]he decision whether to admit or exclude expert testimony is within the discretion of the trial court and will be overturned only if that discretion has been manifestly abused." *Wellman v. Wehmeyer,* 965 S.W.2d 348, 351 (Mo.App. E.D.1998). He then argues that the trial court abused its discretion in admitting certain testimony by these officers.

As to Officer Hellerich, Appellant first claims the trial court erred in allowing him to testify about the movement of his vehi-

---

**6.** "At least two reasons exist for precluding jurors' statements as a basis for impeaching a verdict. First, if verdicts could be set aside for such reasons, thus prompting inquiry into the jury's deliberations because a juror's statements indicate that he did not understand the law or properly weigh the evidence, virtually all litigation would be without conclusion. Second, the juror's mental process is secret to the juror and is incapable of refutation or corroboration." *McPherson v. David,* 805 S.W.2d 260, 262 (Mo.App. W.D. 1991).

cle. In his one-sentence argument, Appellant contends that no foundation was laid for this testimony and that the testimony was based on speculation and conjecture. He claims that Officer Hellerich's testimony about the vehicle's movements was not based on any evidence or personal knowledge, but offers no further argument or supporting case law.

The record clearly reflects that Officer Hellerich based his testimony on evidence assembled during the course of the accident investigation. At trial, Officer Hellerich stated that his testimony regarding the movement of Appellant's vehicle was based upon gouge marks at the scene, tire marks, marks at the point of impact, the damage to the vehicles, the testimony incorporated in his accident report, and his previous experience in accident investigation. The trial court did not abuse its discretion in allowing Officer Hellerich's testimony. Appellant could have identified any weaknesses in the evidence supporting Officer Hellerich's conclusions during cross-examination.

With respect to Officer Harms, Appellant claims that Officer Harms' testimony about the speed of Appellant's vehicle was not supported by the evidence. In making this argument, Appellant wholly fails to direct this court to any particular testimony in the record that he claims was improper. In addition, he fails to identify any ruling made by the trial court on this issue. Accordingly, we have nothing to review. Point denied.

■ In his nineteenth and final point, Appellant claims the trial court erred in

overruling his motion for remittitur or, in the alternative, for new trial because "the verdicts demonstrated bias, passion, and prejudice on the part of the jury, in that the verdicts were grossly excessive in amount." [7] We first address Appellant's claim that the trial court erred in denying him a new trial based upon the verdict.

■ A new trial is required when jury bias and prejudice results in an excessive verdict. *Letz*, 975 S.W.2d at 174. But the size of the verdict alone cannot establish jury bias, passion or prejudice, and " '[t]he complaining party must show that the verdict, viewed in the light most favorable to the prevailing party, was glaringly unwarranted and that some trial error or misconduct of the prevailing party was responsible for prejudicing the jury.' " *Willman v. Wall*, 13 S.W.3d 694, 699 (Mo.App. W.D. 2000) (quoting *Letz*, 975 S.W.2d at 174).

Appellant has failed to demonstrate that any trial error or misconduct on the part of Respondents created jury prejudice. He attempts to do so by reference to his previous eighteen points and claims that they establish error and misconduct that incited bias and prejudice in the jury. As reflected, *supra*, however, the vast majority of those eighteen points are without merit and fail to establish trial court error. Accordingly, we cannot say the trial court erred in denying Appellant's request for a new trial based upon the verdict.

■ Alternatively, Appellant contends that, even if a new trial was not mandated, the award was excessive and the trial court erred in refusing to reduce it. In reviewing the trial court's decision

---

7. *Appellant's point relied on states:*
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR REMITTITUR, OR IN THE ALTERNATIVE NEW TRIAL, BECAUSE:
 A. THE VERDICTS DEMONSTRATED BIAS, PASSION AND PREJUDICE ON THE PART OF THE JURY, IN THAT THE VERDICTS WERE GROSSLY EXCESSIVE IN AMOUNT.
 B. THE VERDICTS WERE GROSSLY EXCESSIVE IN AMOUNT.

to deny remittitur, our review is guided by the following principles:

The assessment of damages is primarily the function of the jury. *Emery v. Wal–Mart Stores, Inc.*, 976 S.W.2d 439, 448 (Mo. banc 1998). A trial court has great discretion in approving a verdict or setting it aside as excessive. *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 174 (Mo.App. W.D.1997). An appellate court, therefore, "will interfere only when the verdict is so grossly excessive that it shocks the conscience of the court and convinces the court that both the jury and the trial court a bused their discretion." *Id.* (quoting *Fust v. Francois*, 913 S.W.2d 38, 49 (Mo.App. E.D. 1995)).

\* \* \*

▆▆▆ Remittitur may be ordered where the jury errs by awarding a verdict that is simply too bountiful under the evidence. *Id.* A new trial is not required because the jury is culpable only of an honest mistake as to the nature and extent of injuries, not of misconduct. *Id.* Remittitur is appropriate "if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages." *§ 537.068*, RSMo 1994.

No precise formula exists for determining whether a verdict is excessive, and each case must be considered on its own facts. *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 211 (Mo. banc 1991). Ultimately, the test is what amount fairly and reasonably compensates the plaintiffs for the injuries sustained. *Id.*

*Willman*, 13 S.W.3d at 699.

▆▆▆ "In determining whether an award is excessive, we look to a number of factors including: (1) loss of income, both present and future; (2) medical expenses; (3) plaintiff's age; (4) the nature and extent of plaintiff's injuries; (5) economic considerations; (6) awards given and approved in comparable cases; and (7) the superior opportunity for the jury and the trial court to evaluate plaintiff's injuries and other damages." *Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 333 (Mo. App. W.D.2000). "Missouri appellate courts no longer engage in close scrutiny of the amounts awarded by juries for personal injuries since the trial court is in a much better position than we are to assess the verdict." *Id.*

With regard to the compensatory damages awards, while listing the factors to be considered in assessing compensatory damages under the applicable statute and case law and stating that this court must consider the evidence related to each of them, Appellant limits his argument to just one of those factors. His contention rests solely on an assertion that awards of $3.3 million were excessive in light of other wrongful death awards in the State of Missouri. But he relies entirely on a single case, *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155 (Mo.App. W.D.1997).

Appellant points to statements in *Letz* indicating that the majority of death cases from 1986 through 1996 resulted in verdicts in the tens of thousands to hundreds of thousands of dollars. *Id.* at 176. He then argues that a compensatory award of $3.3 million must be excessive because the *Letz* court assessed compensatory damages in that case to be $2.5 million. In making this argument, aside from noting that the referenced cases involved death claims, Appellant fails to establish how *Letz* or the other cases were comparable to the case at bar. In fact, he doesn't mention any of the evidence adduced in this

case or the facts of any of the referenced cases.

 Appellant has wholly failed to provide a sufficient argument to warrant consideration of remitting the compensatory damages award. "Compensatory damages may be awarded based on the pecuniary losses suffered by reason of the decedent's death, funeral expenses, loss of services, consortium, companionship, and comfort, and the pain and suffering experienced by the decedent because of the defendants' misconduct." *Letz,* 975 S.W.2d at 176. Pecuniary loss can be established by evidence of the decedent's earning capacity, life expectancy, age, habits, health, character and talents. *Id.* "In computing the loss of consortium for the loss of a parent for a child, or the loss of a child for a parent, factors such as the physical, emotional, and psychological relationship between the parent and child must be considered." *Barnett v. La Societe Anonyme Turbomeca France,* 963 S.W.2d 639, 657 (Mo.App. W.D.1997). Appellant's argument does not address any of the factors relevant to assessing compensatory damages.

Merely comparing the amount of the award to a previous award or the average award made in an historical ten-year period does not provide a sufficient basis for assessing whether the verdict fairly compensates the plaintiffs for their injury. "Although awards given and approved in comparable cases is a factor to be looked at in considering remittitur, ... such comparison is not conclusive as to whether or not the award is 'so grossly excessive that it shocks the conscience and convinces this court that both the trial judge and the jury have abused their discretion.'" *Redfield v. Beverly Health & Rehab. Servs., Inc.,* 42 S.W.3d 703, 713 (Mo.App.E.D.2001) (quoting *Botanicals on the Park, Inc. v. Micro-*

*code Corp.,* 7 S.W.3d 465, 470 (Mo.App. E.D.1999)).

Moreover, Appellant failed to note that in *Barnett v. La Societe Anonyme Turbomeca France,* 963 S.W.2d 639 (Mo.App. W.D.1997), this court remitted a compensatory damage award to $3.5 million in a wrongful death case. *Id.* at 658. The awards in this case were less than that award. Furthermore, in *Coggins v. Laclede Gas Co.,* 37 S.W.3d 335, 342 (Mo.App. E.D.2000), the Eastern District of this court affirmed a compensatory damage award of $4.5 million. In so doing, the court stated: "Our research reveals that in Missouri only verdicts much larger than the verdict here have been remitted on appeal. *Laclede* has not directed us to and we have not discovered a case where an award of this size has been remitted on appeal...." *Id.* at 343–44. Appellant's argument falls far short of establishing an abuse of discretion by the court or the jury in assessing compensatory damages.

Appellant also claims that the "punitive damages" awards of $4.5 million in each case were excessive. "Section 537.090 provides that in wrongful death cases '[t]he mitigating or aggravating circumstances attending the death may be considered by the trier of facts' in assessing damages." *Barnett,* 963 S.W.2d at 659. Damages awarded for aggravating circumstances in wrongful death cases are punitive in nature, and a punitive damages analysis applies in reviewing an award of aggravating circumstances damages under § 537.090. *Id.*

 "Punitive damages may properly be imposed to further society's interests of punishing unlawful conduct and deterring its repetition." *Letz,* 975 S.W.2d at 177. "To satisfy the due process and reasonableness requirements, the amount of punitive damages should reflect the enormity of the defendant's offense and be

related to actual or potential harm resulting therefrom." *Id.*

■■■■ The assessment of punitive damages is peculiarly committed to the discretion of the jury and trial court, and appellate courts will only interfere in extreme cases. *Barnett,* 963 S.W.2d at 661. "On appellate review, an abuse of discretion is established when the size of the punitive award is so disproportionate to the relevant factors that it reveals improper motives or a clear absence of the honest exercise of judgment." *Id.* A punitive damages verdict will only be reduced or otherwise interfered with when the amount is manifestly unjust. *Id.*

■■■■ The relevant factors to consider in assessing a punitive damages award have been set forth as follows:

> In reviewing a punitive damages award for excessiveness, due process and reasonableness requirements compel consideration of the degree of reprehensibility of the defendant's conduct, the relationship between the punitive damages award and the harm or potential harm suffered by the plaintiff, and the difference between the award and the civil penalties authorized or imposed in comparable cases. Missouri courts have also considered the following additional factors in determining the propriety of a punitive damages award: (1) aggravating and mitigating circumstances surrounding the defendant's conduct; (2) the degree of malice or outrageousness of the defendant's conduct; (3) the defendant's character, financial worth, and affluence; (4) the age, health and character of the injured party; (5) the nature of the injury; (6) awards given and approved in comparable cases; and (7) the superior opportunity for the jury and trial court to appraise the plaintiff's injuries and other damages.

*Letz,* 975 S.W.2d at 177–78 (internal citations omitted).

In arguing that the punitive damages awards were excessive, Appellant almost entirely ignores the relevant factors. He contends that "the jury clearly intended to award combined compensatory and punitive damages" in the initial $3.3 million verdicts because he does not believe that the evidence supported a compensatory damages award in that amount. In so doing, Appellant does not argue the evidence. Rather, he asserts that "[a]ll of the evidence relevant to compensatory damages concerned the relationships between the respondents and decedents," but he provides no citations to the record.

Appellant's contentions are devoid of merit. It is certainly not clear that the jury intended to include punitive damages in the original compensatory damages verdicts. In this regard, it is difficult to discern why the jury would have returned verdicts for additional aggravating circumstances damages if they actually believed that such an award was already included in their compensatory damages award. Moreover, the jury is presumed to have followed the instructions given to them by the trial court. *Cole ex rel. Cole,* 23 S.W.3d at 759; *Lyons,* 951 S.W.2d at 598. Furthermore, Appellant does not specifically argue any of the evidence in the case to support his assertion that the evidence does not support the compensatory damage awards.

Appellant also claims that because he had already been convicted of criminal misconduct at the time of trial and faced jail time that he did not need to be punished further and that no punitive damages were necessary in this case. Appellant fails to cite to any authority for his apparent proposition that no punitive damages should be awarded where the defendant

has been punished under the criminal laws and is apparently asking us to adopt such a rule. We decline the invitation. *See, Call,* 925 S.W.2d at 844 (affirming an award of punitive damage in a wrongful death drunk driving case awarded after criminal conviction of defendant).

Finally, Appellant notes that, unlike the defendants in the Turbomeca cases, he had no financial incentive for his actions, and he chronicles the egregious behavior that led to the punitive damages awards in those cases. However, in those cases, total punitive damage awards of $67,500,000.00 in *Letz*[8] and $175,000,000.00 in *Barnett*[9] were remitted to $26,500,000.00 in each case. *Letz,* 975 S.W.2d at 180; *Barnett,* 963 S.W.2d at 645, 667. Appellant fails to explain how this argument supports his claim that the $4.5 million punitive damage verdicts in this case were excessive.

With regard to the degree of reprehensibility of his conduct, Appellant acknowledges that the jury could have considered the speed of his car, his blood alcohol level, and the lack of evasive maneuvers in assessing punitive damages. Certainly, this evidence supports a finding of a significant degree of reprehensibility. *See, Call,* 925 S.W.2d at 852.

In addition, the punitive damage awards of $4.5 million seem to bear a reasonable relationship to the $3.3 million awards of compensatory damages entered by the trial court. "The ratio of punitive and actual damages is commonly cited as an indicium of an unreasonable or excessive punitive damages award." *Letz,* 975 S.W.2d at 179.

In this instance, the punitive damage awards were not even two times the amount of compensatory damages. Accordingly, the ratio between compensatory and punitive damages is not notably high, or even significant, and does not indicate that the punitive damages award was excessive. *See, Id.* at 179–80 (holding that a ratio of 27:1 was arguable high in that case, but noting that ratios of 4:1 and 10:1 had been deemed acceptable in other cases).

Since Appellant did not try to compare the aggravated circumstances awards in this case to those imposed in comparable cases, he has failed to provide any indication that this award is out of line with other similar cases.

From the foregoing, we conclude that none of the due process considerations utilized in assessing the excessiveness of a punitive damages award indicates that the awards against Appellant were excessive. With respect to the additional factors considered by Missouri courts in evaluating excessiveness of a punitive award, Appellant has offered no argument. He has not pointed to a single factor or directed this court to any evidence in the record that would support his contention that the awards for aggravating circumstances were excessive. Point denied.

The judgments in favor of Respondents and against Appellant in the actions for the deaths of Cecil C. Stowers, Jr. and Tracy L. Stowers are affirmed. The judgment in the action for the death of Sydney L. Stowers is reversed, and the case is

8. In *Letz,* the jury verdict entered by the court was for $70,000,000.00 and did not separate compensatory and punitive damages. *Letz,* 975 S.W.2d at 161. On appeal, this court determined that based on the evidence only $2,500,000.00 of the award was attributable to compensatory damages and that $67,500,000.00 was assessed by the jury in punitive damages. *Id.* at 177.

9. The jury award in *Barnett* was remitted by the trial court to $87,500,000.00. *Barnett,* 963 S.W.2d at 646.

remanded for entry of judgment in accordance with this opinion.

All concur.